477 F.2d 711
 Fed. Sec. L. Rep. P 93,931
Louis GARBER, Plaintiff-Appellee,
v.
Cortes W. RANDELL et al., Defendants-Appellees.
Mildred LIPSIG et al., Plaintiffs-Appellees,
v.
NATIONAL STUDENT MARKETING CORPORATION et al., Defendants-Appellees.
Domenick L. NATALE, Plaintiff-Appellee,
v.
NATIONAL STUDENT MARKETING CORPORATION et al.,
Defendants-Appellees, and White & Case, Defendant-Appellant.
 Nos. 743, 766, Dockets 72-1820, 73-1339.
 United States Court of Appeals,
Second Circuit.
 Argued Jan. 11, 1973.
Decided April 9, 1973.
 
 Edwin J. Wesely, New York City (Peter H. Kaminer, Winthrop, Stimson, Putnam & Roberts, New York City, of counsel), for defendant-appellant, White & Case.
 Julius Levy, New York City (Abraham L. Pomerantz, New York City, of counsel), for plaintiffs-appellees.
 John Logan O'Donnell, New York City (Charles M. McCaghey, Jonathan C. Lane, Olwine, Connelly, Chase, O'Donnell & Weyher, New York City, of counsel), for defendant-appellee National Student Marketing Corp.
 William E. Hegarty, New York City (David R. Hyde, Mathias E. Mone, Cahill, Gordon, Sonnett, Reindel & Ohl, New York City, of counsel), for plaintiff-appellee, Peat, Marwick, Mitchell & Co.
 Ronald P. Wertheim, Washington, D. C. (David Ginsburg, Lee R. Marks, Ginsburg, Feldman & Bress, Washington, D. C., of counsel), for plaintiff-appellee, Cameron Brown.
 Before LUMBARD, KAUFMAN and MANSFIELD, Circuit Judges.
 MANSFIELD, Circuit Judge:
 
 
 1
 In these three consolidated class and derivative suits by stockholders of National Student Marketing Corp. et al. ("NSM" herein),[1] which allege violations of the federal securities laws on the part of some 58 defendants, the law firm of White & Case ("W & C" herein), originally named as a defendant in one suit only (the Natale action), appeals from two orders of the District Court for the Southern District of New York entered by Chief Judge Edelstein. The first order, filed on April 20, 1972, directed, among other things, that the three actions (including the Natale suit) be consolidated for pretrial purposes and that plaintiffs file a consolidated amended complaint, which has since been served on June 5, 1972. The second order, dated February 14, 1973, denied W & C's motion for a severance, 58 F.R.D. 492. We reverse the first order insofar as it directs the filing of a consolidated complaint and in all other respects affirm both orders.
 
 
 2
 Two of the actions (the Garber and Lipsig suits) are purported class suits by NSM stockholders which charge that during the period from April 1968, to March 1, 1970, the defendants, who include various directors and officers of NSM; Peat, Marwick, Mitchell & Co. ("PMM" herein), its independent auditors; and various stockbrokers, investment banking firms, and public relations firms, used materially false and misleading financial reports, statements, releases, predictions and estimates to inflate the market price of NSM shares, with resulting benefits to some of the defendants and loss to those who purchased shares during the relevant period, all in violation of Sec. 10 of the Securities Exchange Act of 1934, 15 U.S.C. Sec. 78j and SEC Rules issued thereunder, notably Rule 10b-5, 17 C.F.R. Sec. 240.10b-5.
 
 
 3
 The Natale complaint, which joined W & C as a defendant along with those named in the two earlier suits, contains basically the same allegations on behalf of purchasers of NSM shares during the same period (April 1968 to March 1, 1970) without specifying any conduct on the part of W & C alleged to have violated the federal securities laws. Natale's designation of W & C as a defendant was apparently inspired by the SEC's inclusion of W & C as a defendant in a suit for injunctive relief instituted by the SEC against most or all of the same defendants in the United States District Court for the District of Columbia shortly before the commencement of the Natale suit here.
 
 
 4
 The allegations of the Consolidated Amended and Supplemental Complaint are more detailed than those asserted in the three individual complaints and claim violations of both the Securities Act of 1933, 15 U.S.C. Sec. 77a et seq., and the 1934 Act, 15 U.S.C. Sec. 78a et seq. The consolidated complaint is for the most part devoted to charges of artificial inflation of NSM shares during the period from April 1, 1968, to February 17, 1972. Upon the basis of the complaint recently filed by the SEC, Paragraphs 16 to 29 allege, upon information and belief, on behalf of plaintiff Natale only, wholly distinct claims against W & C.
 
 
 5
 The principal claim against W & C relates to its activities as counsel for NSM in the closing on October 31, 1969, of the merger of Interstate National Corporation ("Interstate" herein) into NSM. It is alleged that in connection with that merger W & C failed to disclose to stockholders of the two companies that a "comfort letter" which was required to be furnished pursuant to the merger agreement by defendant PMM, accountants for NSM, did not conform to the terms of that agreement. According to the consolidated complaint, the comfort letter was to state that certain unaudited financial statements of NSM had been prepared in accordance with generally accepted accounting principles and that NSM had not suffered any material adverse interim change in its financial position or in the results of its current operations; instead, the letter revealed that there had been a material over-statement of NSM's current earnings in earlier unaudited interim financial statements used to solicit stockholder approval of the merger and that instead of the profit shown on the interim unaudited statement, NSM had suffered a loss for the period ended May 31, 1969, and would show a "break-even" for the year ended August 31, 1969.
 
 
 6
 The claim against W & C is that, notwithstanding its knowledge of the foregoing information and of PMM's recommendation that the merging companies should consider submission to their stockholders of the corrected financial data prior to proceeding with the closing of the merger, W & C and attorneys for Interstate (Lord, Bissell & Brook) nevertheless proceeded with the closing, respectively issuing opinions that all steps necessary to consummate the merger had been validly taken, without requiring a revision of the financial statements to reflect the material downward adjustment of NSM's earnings or insisting upon a disclosure of the earnings decline to the stockholders of both companies or to the SEC. It is further alleged that upon learning of the adjustment of earnings the directors of both companies failed to publish the information or notify stockholders and that W & C, acting on behalf of NSM, transmitted to the SEC a Form 8K containing false representations as to NSM's financial statements, and concealed the existence and contents of the comfort letter. On or about October 31, 1969, certain officers and directors of Interstate allegedly sold 77,000 NSM shares without disclosing the contents of the comfort letter.
 
 
 7
 Two other discrete claims are asserted against W & C: (1) that on November 20, 1969, it rendered an opinion with respect to NSM's acquisition of Compujob, Inc. concurring in an opinion by the latter's legal counsel which falsely stated that title to its shares had passed to NSM as of August 29, 1969, and (2) that on October 31, 1969, and November 20, 1969, W & C rendered opinions in connection with NSM's disposition of Collegiate Advertising Ltd., which falsely asserted that title had passed as of the end of August, 1969. The purpose of the alleged backdating of the transactions was to enable profits realized from them to be included in NSM's August 31, 1969, year-end financial statement.
 
 
 8
 It is not claimed that W & C profited from any of the foregoing conduct.
 
 
 9
 The threshold question is whether the district court's two orders, being interlocutory, are appealable. We have recognized that consolidation of stockholders' suits during pretrial stages pursuant to Rule 42 F.R.Civ.P. may benefit both the court and the parties by expediting pretrial proceedings, avoiding duplication and harassment of parties and witnesses, and minimizing expenditure of time and money by all persons concerned. See MacAlister v. Guterma, 263 F.2d 65 (2d Cir. 1958). However, where the claims against, or defenses of, some parties are substantially different from those of others, some may be prejudiced by consolidation, particularly if one general or lead counsel exercises his supervisory power in a way that tends to deprive them of full discovery and preparation of their individual cases. For these reasons the determination in each case as to whether the benefits from consolidation will outweigh the prejudice to individual parties rests in the district court's sound discretion. MacAlister v. Guterma, supra at 69-70; United States v. Knauer, 149 F.2d 519 (7th Cir. 1945), aff'd., 328 U.S. 654, 66 S.Ct. 1304, 90 L.Ed. 1500, rehearing denied, 329 U.S. 818, 67 S.Ct. 25, 91 L.Ed. 697 (1946), petition denied, 332 U.S. 834, 68 S.Ct. 210, 92 L.Ed. 407 (1947).
 
 
 10
 For essentially the same reasons the court's power to sever claims and order separate trials is likewise discretionary, requiring it to balance the factors of benefit and prejudice that will result from the alternative courses. The denial of a motion for severance will not, therefore, usually be set aside in the absence of a clear showing of abuse of discretion. Walsh v. Miehle-Goss-Dexter, Inc., 378 F.2d 409, 412 (3d Cir. 1967).
 
 
 11
 Since consolidation and severance are both discretionary and interlocutory, such orders are not ordinarily appealable. Levine v. American Export Industries, 473 F.2d 1008 (2d Cir. 1973) (consolidation); United States v. Garber, 413 F.2d 284, 285 (2d Cir. 1969) (severance).
 
 
 12
 "An order granting or denying consolidation, or granting or denying separate trials, is an ordinary, nonappealable interlocutory order. Severance orders are the same. Such orders are appealable only by certification and permission under 28 U.S.C. Sec. 1292(b) [footnotes omitted]." 9 J. Moore, Federal Practice p110.13 at 183 (2d ed. 1972).[2]
 
 
 13
 The general rule against appealability of interlocutory orders granting or denying consolidation or severance, however, is subject to a well-recognized exception, sometimes labelled the "collateral order" doctrine. Immediate review may be had with respect to that "small class [of interlocutory orders] which finally determine claims of right separable from, and collateral to, rights asserted in the action, too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated." Cohen v. Beneficial Industrial Loan Corp., 337 U.S. 541, 546, 69 S.Ct. 1221, 1225, 93 L.Ed. 1528 (1949); MacAlister v. Guterma, supra 263 F.2d at 67. Furthermore, since finality must be given a "practical rather than a technical construction," Cohen v. Beneficial Industrial Loan Corp., 337 U. S. at 546, 69 S.Ct. at 1226 (1949); Brown Shoe Co. v. United States, 370 U.S. 294, 306, 82 S.Ct. 1502, 8 L.Ed.2d 510 (1962), we have, in the interest of minimizing delay and expense, permitted appeal of an otherwise non-appealable order where it is directly related to a final and appealable order under review in a class action by stockholders. Green v. Wolf Corp., 406 F.2d 291, 302 (2d Cir. 1968), cert. denied, 395 U.S. 977, 89 S. Ct. 2131, 23 L.Ed.2d 766 (1969).
 
 
 14
 The appealability of the orders before us turns, therefore, on whether either order finally determines collateral rights that are too important to be denied review or to be deferred until the entire case is adjudicated. In resolving this issue we are fortunate in having the benefit of some carefully considered opinions of this court in the very area now before us, consolidation of stockholders' derivative and class suits. See, e. g., MacAlister v. Guterma, supra; Farber v. Riker-Maxson, 442 F.2d 457, 459 n. 1 (2d Cir. 1971). In MacAlister we held that an immediate appeal may be taken from an order denying the consolidation of stockholders' derivative suits where the refusal to order consolidation "may prove oppressive." MacAlister v. Guterma, supra 263 F.2d at 67. In affirming the denial of the consolidation, we noted the doubtful authority of the district court to order a consolidated complaint which would have the effect of merging the rights of some parties with those of others in violation of principles established in Johnson v. Manhattan Railway Co., 61 F.2d 934 (2d Cir. 1932), affd., 289 U.S. 479, 53 S.Ct. 721, 77 L.Ed. 1331 (1933):
 
 
 15
 "[C]onsolidation is permitted as a matter of convenience and economy in administration, but does not merge the suits into a single cause, or change the rights of the parties, or make those who are parties in one suit parties in another." Johnson v. Manhattan Ry. Co., 289 U.S. at 496-497, 53 S.Ct. at 727-728 (1933).
 
 
 16
 Accord, Greenberg v. Giannini, 140 F.2d 550 (2d Cir. 1944) (per L. Hand, C. J.); Zdanok v. Glidden Co., 327 F.2d 944, 950 n. 6 (2d Cir.), cert. denied, 377 U.S. 934, 84 S.Ct. 1338, 12 L.Ed.2d 298 (1964); Journapak Corporation v. Bair, 27 F.R. D. 509, 510-511 (S.D.N.Y.1961); 5 J. Moore, Federal Practice p42.02, at 42-21; 9 Wright & Miller, Federal Practice & Procedure: Civil Sec. 2382 at 255 (1971).
 
 
 17
 Accepting our admonition that "Cohen must be kept within narrow bounds, lest this exception swallow the salutory 'final judgment' rule," Weight Watchers of Phila. v. Weight Watchers Int., 455 F.2d 770, 773 (2d Cir. 1972), no sound reason is advanced for not following the teaching of Guterma with respect to appealability of interlocutory consolidation orders in these stockholders' suits. That decision drew the line between an order which merely requires the parties, in the interest of avoiding needless duplicative expenditure of time and money, to join in common pretrial discovery and preparation and an order which goes beyond these permissible objectives to deny a party his due process right to prosecute his own separate and distinct claims or defenses without having them so merged into the claims or defenses of others that irreparable injury will result. This latter kind of order may be reviewed under the "collateral order" doctrine. Applying the teachings of MacAlister here, we find that the district court's consolidation order, although purporting to be for "pretrial purposes," went beyond mere consolidation of the three suits for such purposes. In addition it directed the filing of the Consolidated Amended Supplemental Complaint, which superseded the complaints filed in the three separate actions. It further appears that the effect of this consolidation may be to cause serious prejudice to W & C.
 
 
 18
 The claims asserted against W & C in the consolidated complaint are stated on behalf of only one of the 15 plaintiffs, Domenick L. Natale. Indeed it is questionable whether he could properly represent a class since he acquired his shares prior to October 31, 1969, the date when W & C first allegedly engaged in wrongful conduct, and since he did not purchase them on the open market.[3] Furthermore, at least some of the plaintiffs have disassociated themselves from Natale's claims against W & C. In a letter to this court dated November 22, 1972, Harry H. Lipsig, writing on behalf of himself and the other five Lipsig plaintiffs, states "neither I nor any of the other Lipsig plaintiffs intended to assert any claims . . . against White & Case or Lord, Bissell & Brook" and "the Lipsig plaintiffs . . . do not desire to have their claims brought against the other defendants consolidated or otherwise merged or combined with claims that other stockholders might wish to assert against those lawyer defendants."
 
 
 19
 Aside from the disassociation of some plaintiffs from Natale's claims against W & C, the three transactions in which W & C allegedly participated are relatively narrow and limited as to scope, subject matter and time, in contrast to the broad claims asserted by all plaintiffs against most of the other 57 defendants. W & C is not claimed to have participated with these numerous other defendants in the extensive manipulative scheme allegedly carried out by them to defraud NSM stockholders, which formed the original basis and principal claim of all three actions. According to the consolidated complaint, this scheme was carried out during the period from April 1, 1968, to February 17, 1972, or for almost four years, and involved the use of scores of false financial reports, statements, releases, predictions and estimates, some 24 of which are specified as examples in Paragraph 11 of the consolidated complaint. Relief is sought on behalf of all purchasers of NSM shares during the four-year period, including the named plaintiffs.
 
 
 20
 The charges against W & C, on the other hand, are limited to those claims asserted by Natale only in Paragraphs 16 to 29 of Count I. W & C is not even named in Count II. The claims against W & C, furthermore, are limited to three transactions alleged to have occurred during the 2 1/2-month period from October 31, 1969, to January 19, 1970, with most of the alleged wrongdoing having occurred on one day-October 31, 1969. There is no claim that W & C realized any improper gains from these transactions. Assuming the validity of Natale's claims against W & C, as we must for the present purposes, it appears likely that only those members of the class who purchased NSM shares after the alleged concealment on October 31, 1969, of the adjustments to the NSM current operating results would be in a position to claim damages. Thus at some point it will become necessary to separate their claims against W & C from the claims of all plaintiffs against most of the other defendants, which cover a much longer period of time.
 
 
 21
 To permit such limited claims against W & C to be joined with numerous unrelated claims by other purchasers against some 50-odd other defendants in one "mixed bag" type of consolidated complaint would be fundamentally unfair and would violate the principles underlying our decision in MacAlister v. Guterma, supra, and the unbroken line of authority going back to Johnson v. Manhattan Railway Co., supra. Nor is the prejudice to W & C alleviated by designation of the claims against it separately in Paragraphs 16 to 29 as claims asserted solely by Natale. This mere change in form does not serve to avoid the harm threatened by the merger of all claims into a single cause. Accordingly, we reverse the district court's consolidation order insofar as it directs that a consolidated complaint be filed against W & C.[4] Upon remand the separate Natale complaint will be reinstated.
 
 
 22
 Turning to the district court's denial of W & C's motion for a severance, W & C urges reversal on several grounds: First it contends that in view of the very limited nature of the claims against it and its unique issues and defenses, it will be severely prejudiced by a joint pretrial and trial of the consolidated claims, whereas none of the other parties would be prejudiced by a severance. It appears that despite W & C's non-participation in most of the alleged misconduct it will be subject to the heavy burden, absent a severance, of participating in voluminous pretrial discovery in a mammoth proceeding that may last for years. If the limited claims against it were severed, on the other hand, pretrial discovery could be completed without delay and the issues with respect to W & C promptly tried within a fraction of the time needed to dispose of the numerous other issues with respect to other defendants. Furthermore, it is asserted, the novel claims against W & C have led to a great deal of speculation and uncertainty on the part of the public and the bar as to the personal vulnerability of lawyers to heavy damages for action taken by them solely in their capacity as such.
 
 
 23
 Were the foregoing the entire picture, we might be persuaded, because of the unique circumstances of this case, to hold that denial of a severance here amounts to an abuse of discretion. However, it does not appear that a severance would enable W & C to escape the prejudice complained of or gain the benefits it seeks. In the pending action by the SEC against W & C and the other defendants, Judge Barrington D. Parker of the United States District Court for the District of Columbia entered, on March 7, 1973, an order, followed by a memorandum decision dated March 22, 1973, which denied W & C's motion for a severance of the claims asserted against it in that proceeding and for a transfer of those claims to the Southern District of New York. Thus W & C, even assuming a severance of the Natale suit against it here, may face in the District of Columbia the very pretrial and trial problems sought to be avoided by it, including involvement, expense and delay in pretrial discovery and trial in the parallel proceeding instituted there by the SEC against it and the other defendants, and it is doubtful whether an immediate trial of the Natale claims against W & C would bar trial of the same claims against it by the SEC.
 
 
 24
 The picture is further complicated by the fact that some other "lawyer defendants" (e. g., Lord, Bissell & Brook, Meyer, Schauer, Katz and Eppley) are in substantially the same position as W & C. Furthermore, PMM contends that the claims against it, being based on essentially the same facts, are inextricably involved with those against W & C and that a severance of the latter would prejudice PMM's cross-claim against W & C. Lastly, notwithstanding Judge Edelstein's assumption that the Multi-District Panel had in effect granted a "de facto" severance of the claims here against W & C, that Panel recently ordered transfer of those claims to the District of Columbia for pretrial consolidation with the SEC's claims there and vacated its order only because of the pendency of this appeal.
 
 
 25
 In view of these complications we cannot conclude that the district court's denial of a severance in this case constituted an abuse of discretion, particularly since it was without prejudice to a motion by W & C pursuant to Rule 42(b) for a separate expedited trial of the claims against it. Thus, assuming the Multi-District Panel transfers the claims here on appeal to the District of Columbia, the way is open for W & C to apply to Judge Parker for an order expediting and giving priority to discovery with respect to the claims against it so that these claims may, upon completion of that discovery, be retransferred to the Southern District of New York for an expedited trial here on the merits.
 
 
 26
 The district court's consolidation order is reversed to the extent that it directs the filing of a consolidated complaint. In all other respects both orders are affirmed.
 
 
 
 [1]
 The actions consolidated by the district court's April 20, 1972, order were Garber v. Randell, 70 Civ. 835, begun on March 2, 1970; Lipsig v. National Student Marketing Corp., 70 Civ. 2006, begun on May 15, 1970; and Natale v. National Student Marketing Corp., 72 Civ. 721, begun on February 18, 1972
 
 
 [2]
 Although consolidation or severance orders may be challenged by way of a petition for a writ of mandamus, see United States v. Garber, 413 F.2d 284, 285 (2d Cir. 1969); Nelson v. Grooms, 307 F.2d 76 (5th Cir. 1962); American Pacific Dairy Products v. District Court of Guam, 217 F.2d 589 (9th Cir. 1955), such relief will be granted only upon a showing of extraordinary circumstances or such gross abuse of discretion as to amount to action beyond the court's power, Regec v. Thornton, 275 F.2d 801 (6th Cir. 1960)
 
 
 [3]
 Natale was an attorney representing a company acquired by NSM in 1968, who received from NSM restricted shares in payment for legal services rendered by him to the acquired company
 
 
 [4]
 Our decision should not be construed as implying that under no circumstances would an order directing the filing of a consolidated complaint be proper. There may be circumstances, e. g., the existence of substantially complete identity between the claims and defenses in all actions, where a consolidated complaint would be appropriate. As we said in MacAlister: "We do not attempt here to prescribe a rule of universal application to orders granting or denying consolidation." (263 F.2d at 67)