Joseph WALDMAN et al., Plaintiffs,

v.

ELECTROSPACE CORPORATION et al.,
Defendants.

Sidney DUBIN et al., Plaintiffs,

v.

L. HANDELSMAN AND COMPANY
et al., Defendants.

Moses WOLF, Plaintiff,

v.

L. HANDELSMAN AND COMPANY
et al., Defendants.

Nos. 74 Civ. 3097 (HFW), 74 Civ. 3131
(RO) and 74 Civ. 3196 (RO).

United States District Court,
S. D. New York.

Sept. 8, 1975.

Rabin & Silverman, New York City, for plaintiffs Waldman, Sage & Dachs.

Mortimer A. Shapiro, New York City, for plaintiffs Sidney Dubin and Esther Dubin.

Crystal & Driscoll, P. C., New York City, for plaintiff Moses Wolf.

Edward C. Jaegerman, Tappan, N. Y., for defendant Edward M. Cappucci and Martin Buchwald.

Borden & Ball, New York City, for defendant Arnold M. Wolf.

Sidney Kramer, New York City, for defendant Samuel R. Buxbaum.

David M. Markowitz, New York City, for defendant James R. DeSenna.

Shea, Gould, Climenko & Kramer, New York City, for defendant Harvey Cohen.

Rein, Mound & Cotton, New York City, for defendants Morton Lowenbraun and Martin L. Rein.

D'Amato, Costello & Shea, New York City, for defendant L. Handelsman & Co.

Kronish, Lieb, Shainswit, Weiner & Hellman, New York City, for defendant Herbert L. Wolf.

## OPINION

WERKER, District Judge.

Plaintiffs Joseph Waldman, Sadie Sage and Martin Dachs charge that the Electrospace Corporation, its former accountant, and various former officers and directors violated the federal secur-

ities laws [1] by engaging in a continuing fraudulent course of conduct which was designed to, and which did, deceive purchasers of Electrospace securities like themselves as to the financial condition and net worth of the corporation. Their specific allegations of fraud include, but are not limited to: (1) material overstatement of inventory and accounts receivable in the corporation's 1971 and 1972 audited financial statements, (2) material overstatement of income and revenues in the corporation's interim financial statements for 1971, 1972 and 1973, and (3) failure to disclose in 1973 current IRS proposals for upwards adjustment of corporate income tax assessments. This course of conduct allegedly resulted in an inflation of the market price of Electrospace securities.

Plaintiffs have moved the court for consolidation of this action pursuant to Rule 42(a), Fed.R.Civ.P., with two other 10b–5 suits [2] subsequently filed by other purchasers of Electrospace securities. The subsequent cases name as defendants four of the defendants named in *Waldman*. Plaintiffs in these actions have joined in the *Waldman* motion for consolidation. In addition, all three groups of plaintiffs have moved for class action certification of the consolidated cases pursuant to Rule 23, Fed. R.Civ.P. For the reasons discussed below, the motion for consolidation is granted. The motion for class action determination is denied without prejudice to renewal should plaintiffs prove able to remedy the present deficiencies in their class action allegations.

## CONSOLIDATION

Rule 42(a) of the Federal Rules of Civil Procedure provides:

> When actions involving a common question of law or fact are pending before the court, it may . . . order all the actions consolidated; and it may make such orders concerning proceedings therein as may tend to avoid unnecessary costs or delay.

For reasons detailed below in discussion of plaintiffs' Rule 23 motion, the court finds that common questions of law and fact exist in the three actions sought to be consolidated. This conclusion by itself, however, does not mandate consolidation.

It is well recognized that consolidation of stockholders' suits often benefits both the court and the parties by expediting pretrial proceedings, avoiding duplication of discovery and minimizing costs. *See Feldman v. Hanley*, 49 F.R.D. 48, 50 (S.D.N.Y. 1969). It is also true, however, that consolidation may in some instances so prejudice the rights of a defendant that even in the exercise of its sound discretion the court cannot permit it. *Garber v. Randell*, 477 F.2d 711 (2d Cir. 1973). In this case four defendants who are named in the *Waldman* action only allege that consolidation would seriously prejudice them. The men, Harvey Cohen, Morton Lowenbraun, Martin L. Rein, and Herbert L. Wolf, are all former directors of the corporation.[3] They assert that unlike the de-

---

1. Specifically plaintiffs allege violation of § 17(a) of the 1933 Securities Act, 15 U.S.C. § 77q(a); and § 10(b) of the 1934 Securities and Exchange Act, 15 U.S.C. § 78j(b), including Rule 10b–5 thereunder, 17 C.F.R. § 240.10b–5 (1974).

2. *Dubin, et al. v. L. Handelsman & Co., et al.*, 74 Civ. 3131, and *Moses Wolf v. L. Handelsman & Co., et al.*, 74 Civ. 3196. These suits make essentially the same "course

of conduct" allegations as the *Waldman* plaintiffs, the specific charges being, *inter alia*: (1) overstatement of net income, retained earnings and assets in the corporation's 1971 and 1972 audited financial statements, (2) understatement of current liabilities in those statements, (3) failure to list a reserve as necessary for contingent taxes.

3. Wolf, in addition, is a former vice president of the corporation.

fendants named in all three complaints, they are actors on the periphery of the activities alleged to constitute a fraudulent course of conduct. To consolidate the case against them with those against the lead actors, they assert, is to make them defendants in cases in which they have not been charged, to unreasonably complicate their trial, and to subject them to expenditure of "unnecessary counsel fees" for additional discovery.

■■ The court finds none of these objections compelling. Consolidation does not result in merger, and therefore by itself [4] does not, as defendants assert, make them parties to all three actions. *Abrams. v. Occidental Petroleum Corp.*, 44 F.R.D. 543, 547 (S.D.N.Y. 1968). Although it is true that much of the proof presented in these actions will relate to technical accounting principles, the charges and therefore the proof of deviation from generally accepted accounting practices in each case are the same; consolidation therefore does not in this instance compound the technical-

ity or complexity of issues to be presented to a jury. The fact that the *Waldman* plaintiffs have raised a claim against these defendants which plaintiffs in the other two actions have not does not militate against a consolidated trial.[5] Enough common and related issues exist with respect to all claims to indicate that it would needlessly waste both time and manpower to require separate trials. *Cf. Gerber Products Co. v. Beech-Nut Life Savers, Inc.*, 25 F.R. Serv. 42a.1 (S.D.N.Y.1958). It is this court's opinion that rather than requiring expenditure of "unnecessary counsel fees," consolidation will result in a savings of expense for both the parties and the court.

## CLASS ACTION DETERMINATION

Plaintiffs seek to represent a class of persons who purchased Electrospace common stock or, Electrospace 5½% convertible subordinated debentures due October 1, 1983, during the period of January 1, 1972 through April 26, 1974,[6]

---

4. It is of course arguable that plaintiffs in *Dubin* and *Wolf* are more likely to amend their complaints to add these defendants if the cases are consolidated than if they are not. However Dubin and Wolf have already indicated that they will seek leave to so amend even if their motion for consolidation is denied.

5. This case is highly distinguishable from *Garber v. Randell, supra*, on which defendants rely. In *Garber* several of the fifteen plaintiffs specifically disassociated themselves from the claim against White & Case, whereas here the Dubin and Wolf plaintiffs have represented to the court an intention to request leave to amend their complaints so as to name all defendants now charged in the *Waldman* action. More importantly, the one complaint in *Garber* which named the law firm did *not*, as here, allege its participation in the central manipulative scheme at the heart of those actions sought to be consolidated. *See* 477 F.2d at 716. As the Court of Appeals there noted, plaintiff's charges against White & Case were narrowly circumscribed:

> According to the consolidated complaint, this scheme was carried out during the period from April 1, 1968, to February 17 1972, or for almost four years . . .

> The charges against W & C, on the other hand, . . . are limited to three transactions alleged to have occurred during the 2½ month period from October 31, 1969 to January 19, 1970, with most of the alleged wrongdoing having occurred on one day—October 31, 1969.

*Id.* at 717. If after further discovery is taken, defendants Cohen, Lowenbraun, Rein and Wolf are able to demonstrate that the plaintiffs' charges against them, as opposed to the other defendants, are equally circumscribed, the court will consider a motion for severance.

6. To understand plaintiffs' choice of time limitations in defining this proposed class, a brief chronology of alleged events as set forth in the motion papers is in order:

January 1, 1972—Defendants' course of fraudulent conduct is said to date "from at least since" this day.

January 13, 1972—A favorable investment report based on false and misleading corporate information disseminated by defendants appeared in The Predictor, a financial journal.

February 23, 1972—Plaintiff Sage purchased five Electrospace debentures.

and who either retained their securities or sold them at a loss.[7] To win class action certification under Rule 23, plaintiffs must demonstrate: (1) that the class is so numerous that joinder of all members is impracticable, (2) that there are questions of law or fact common to the class, (3) that their claims are typical of those of the class, (4) that they will fairly and adequately represent the interests of the class, (5) that common questions of law or fact predominate over individual questions and (6) that a class action is superior to other available methods of adjudication.[8] The court will consider each requirement separately.

■ *Numerosity:* Plaintiffs allege that between December 31, 1971 and December 31, 1972 the number of shares of Electrospace common stock outstanding increased by over 790,000. They further assert that the number of debenture holders of record decreased by 150 during the same time period, and therefore conclude that "for purposes of this motion it should be assumed that the number of shareholders and debenture holders that are included in the class is in the thousands."[9] It takes more, however, than plaintiffs' *ipse dixit* to make a class. *Professional Adjusting Systems v. General Adjustment Bureau,* 64 F.R.D. 35 (S.D.N.Y.1974).

Their terse argument to the contrary, a decrease in the number of debenture holders of record supports no presumption that anyone new purchased debentures, much less that so many purchased as to make joinder impractical.

■ Nor is plaintiffs' assertion as to increase in shares of stock probative of numerosity. Defendants Lowenbraun and Rein point out that approximately 770,000 shares of the 790,000 share increase were due to a three for two stock split distributed to shareholders on March 15, 1972. The "evidence" plaintiffs present of class size and impracticality of joinder, therefore, amounts to no more than mere speculation. In such circumstances, the court has no choice but to deny class action status; "it is fundamental that those seeking to maintain an action as a class action must make a positive showing that it would be impractical to deny the prayer." *Demarco v. Edens,* 390 F.2d 836, 845 (2d Cir. 1968). *See also Burstein v. Slote,* 12 F.R.Serv.2d 23c.1, case 2 (S.D.N.Y.1968).

■ *Common Questions of Law or Fact:* Where it is alleged that a series of statements containing interrelated and cumulative data were released to the public, the court is presented with a course of conduct raising questions

April 18, 1972—The corporation's audited financial statement for 1971 was issued.

November 1 and 9, 1972—Plaintiff Waldman purchased 1000 shares of Electrospace stock.

November 14, 1972—Plaintiff Wolf purchased 100 shares of Electrospace stock.

March 19, 1973—The Dubin plaintiffs purchased ten Electrospace debentures.

April 18, 1973—The corporation's 1972 audited financial statement was issued.

September 5, 1973—Plaintiff Dachs purchased 500 shares of Electrospace stock.

December 3, 1973—Electrospace filed with the Securities and Exchange Commission (S.E.C.) amendments to its 1971 and 1972 audited financial statements indicating that its net income for those years had been materially overstated.

December 18, 1973—The corporation replaced L. Handelsman & Co. as auditors with Touche Rose & Co.

March 12, 1974—The SEC suspended trading in Electrospace securities.

April 26, 1974—The corporation filed for reorganization under Chapter XI of the Bankruptcy Act.

May " ", 1974—The corporation was formally adjudicated a bankrupt.

7. The class would not, of course, include defendants or their privies.

8. The first four of these requirements are enumerated in Rule 23(a), Fed.R.Civ.P. The last two are found in Rule 23(b)(3).

9. February 28, 1975 Affidavit of Donald M. Kresge in Support of Motion for Class Action Determination, ¶ 11.

common to all who purchased during the period of dissemination. *Green v. Wolf Corp.*, 406 F.2d 291, 299–300 (2d Cir. 1968), *cert. denied, Troster, Singer & Co. v. Green,* 395 U.S. 977, 89 S.Ct. 2131, 23 L.Ed.2d 766 (1969); *Aboudi v. Daroff,* 65 F.R.D. 388, 390–91 (S.D. N.Y.1974); *Fischer v. Kletz,* 41 F.R.D. 377, 381 (S.D.N.Y.1966). The resolution in one litigation of such common questions, relating to the existence, character and materiality of defendants' alleged misrepresentations is both a logical and appropriate way in which to proceed. *In re Caesar's Palace Securities Litigation,* 360 F.Supp. 366, 398 (S.D.N.Y.1973); *Berland v. Mack,* 48 F.R.D. 121, 127 (S.D.N.Y.1969). Common questions in this case include, but are not limited to: (1) whether the 1971 and 1972 Electrospace financial statements overstated net income and assets, (2) whether the overstatements, if they existed, were material, (3) whether the defendants failed to disclose contingent income tax assessments, (4) whether this failure, if it existed, violates the federal securities laws and (5) whether all of the above constitute fraudulent manipulation of the market price of Electrospace securities.

 *Typicality:* At this stage of the litigation the court perceives no evidence which would indicate that plaintiffs' claims are atypical or antagonistic to the claims of those they seek to represent. Defendants suggest that these claims cannot be typical because there has been no showing of the identity or numerosity of class members and therefore no showing that their purchase time and price are substantially similar to plaintiffs'. As the Honorable Lawrence Pierce noted in *Aboudi v. Daroff, supra,* this argument contains a fundamental flaw:

> The course of action of the stock is not equivalent to the course of action of the defendants. . . . Plaintiff's claim is that the reports and statements of defendants throughout the entire period were false and misleading, that these reports and statements were related to one another, and that as a result of these related actions, the market price . . . was inflated above its true value at every point throughout the period, regardless of what that price happened to be or in which direction it happened to be moving at any particular time.

65 F.R.D. at 391.[10] If the court should later find that class action certification is appropriate and that distinctions must be drawn between those who purchased the stock at different times or prices, or between those who purchased debentures and stockholders,[11] it can avail itself of the flexibility inherent in Rule 23. *Green v. Wolf,* 406 F.2d at 291. *See* Rule 23(c), (d).

*Fair and Adequate Representation:* Plaintiffs appear to have a strong personal stake in the outcome of this litigation which is in no way antagonistic to the interests of purported class members. Their attorneys, furthermore, are qualified and experienced in class action litigation. The essential ingredients of fair and adequate representation are therefore present. Defendants argue that the financial ability of the

10. The cases relied on by defendants here are clearly distinguishable for the same reasons expounded by Judge Pierce in *Aboudi. See* 65 F.R.D. at 392.

11. This Court has previously found "no substantial difference" between the claims of debentureholders and shareholders in a 10b-5 class action suit. *See Handwerger v. Ginsberg,* CCH Fed.Sec.L.Rep. ¶ 94,934 (S.D.N. Y.1975), *app. dismissed,* 519 F.2d 1339 (2d Cir. 1975), at note 3.

representative parties to pay for notice to the class and other costs of litigation is also relevant, and ask that any decision on class action certification be delayed pending discovery into plaintiffs' financial resources. This court recently sustained such an argument where the potential class clearly numbered in the hundreds of thousands, and the cost of notice alone far exceeded the possible recoveries of named plaintiffs. *See Dennis, et al. v. Saks & Co., et al.*, 74 Civ. 4419, Memorandum Decision and Order, July 10, 1975 (S.D.N.Y.). The appropriate discovery, however, where called for, is not discovery by defendants of plaintiffs' financial soundness, but plaintiffs' submission to the court *in camera* of affidavits on this issue. Defendants' motions to compel appearances at depositions and answers to interrogatories, therefore, are denied. If and when plaintiffs succeed in demonstrating the requisite numerosity for a class action determination, the court will consider requiring submission of *in camera* affidavits.

*Predominance of Common Questions and Superiority of a Class Action:* Decision on these last two factors, as well as on the definition of a class must perforce await a showing as to identity and numerosity of potential class members.

To summarize the court's decision, then, plaintiffs' motion for consolidation is granted, and counsel for plaintiffs in *Waldman, et al. v. Electrospace, et al.* is appointed lead counsel. Plaintiffs' motion for class action determination is denied without prejudice to renew. Defendants' motions to compel discovery on the issue of plaintiffs' financial resources are denied. Defendants' motions to the extent they seek a stay of class action determination pending discovery are dismissed as moot.

So ordered.