**TURNER BROADCASTING SYSTEM, INC., d/b/a WTBS–TV, Plaintiff,**

v.

**SANYO ELECTRIC, INC., and Thomas E. Rubin, d/b/a Rubin & Associates Advertising, Defendants.**

Civ. A. No. C 82–662 A.

United States District Court, N.D. Georgia, Atlanta Division.

Sept. 30, 1983.

Lawrence S. Burnat, Lynn C. Stewart, Atlanta, Ga., for plaintiff.

Timothy R. Askew, Atlanta, Ga., Marc Lerner, Beverly Hills, Cal., for defendant Thomas E. Rubin.

## ORDER

VINING, District Judge.

In this action the plaintiff, Turner Broadcasting System, Inc., d/b/a WTBS–TV ("Turner"), seeks to enforce the entry of default in its breach of contract claim against the defendant Thomas E. Rubin, d/b/a Rubin & Associates Advertising ("Rubin"). Rubin asserts that the clerk's entry of default was improvident because he claims that the automatic stay provisions of the bankruptcy code applied to Turner's suit. There are three motions pending before this court: the plaintiff's motion for a default judgment, the defendant's motion to set aside the entry of default, and the defendant's motion to dismiss for lack of subject matter jurisdiction or in the alternative to order a change of venue. The court will address these motions in the order presented.

## I.  BACKGROUND

Rubin operated a "media buying service" which regularly purchased advertising time on behalf of various national advertisers, including Sanyo Electric, Inc. ("Sanyo"). Rubin purchased commercial advertising time from a variety of television and radio stations but failed to pay for this advertising time. Accordingly, on February 19, 1981, these television and radio stations filed in the United States Bankruptcy Court for the Central District of California an involuntary petition in bankruptcy against

Rubin. Subsequently, on July 9, 1982, Rubin's answer was stricken, and he was adjudicated a bankrupt because of what the bankruptcy court characterized as his consistent bad faith refusal to engage in discovery. The bankruptcy court's judgment was stayed pending appeal.

In July 1981, approximately five months after the involuntary petition was filed, but before Rubin was adjudicated bankrupt, Rubin contracted to purchase advertising time from Turner for the benefit of Sanyo. Rubin continued to purchase advertising time for Sanyo through December 1981. According to the affidavits presented to this court, the total amount due Turner for the advertising time is $72,930.00, plus interest. At the time of the filing of the involuntary petition, Turner had never done business with Rubin and had no claims against Rubin.

On February 19, 1982, after failing to receive any payment on the amount due except that for the July 1981 invoice, Turner filed suit against Rubin and Sanyo in the State Court of Fulton County. Sanyo answered on March 31, 1982, and removed the case to the United States District Court for the Northern District of Georgia.[1] On April 5, 1982, Rubin was served with a copy of the summons and complaint and pursuant to Fed.R.Civ.P. 12 Rubin should have filed an answer within 20 days. Rather than filing an answer, however, Rubin's general counsel, Marc Lerner, sent a letter to the Clerk of the United States District Court for the Northern District of Georgia advising the Clerk that an involuntary petition in bankruptcy had been filed against Rubin. Lerner's letter also stated that Rubin would not be answering or otherwise participating in the case because Rubin was relying on the automatic stay provisions of 11 U.S.C. § 362(a). Consistent with the promise in the letter, Rubin did not file an answer or any other responsive pleading in the case. Accordingly, on March 18, 1983, upon Turner's application, the Clerk made an entry of default in this case pursuant to

Fed.R.Civ.P. 55(a). Pursuant to Rule 55, Turner now seeks a judgment by default on a sum certain.

## II. DISCUSSION

### A. *The Applicability of 11 U.S.C. § 362(a)*

■ The initial question raised in this case is whether the automatic stay provisions of section 362(a) apply and should have prevented Turner from prosecuting this case and the clerk from entering a default. Section 362(a)(1) provides that a filing of a bankruptcy petition operates to stay "the commencement or continuation ... of a judicial, administrative, or other proceeding against the debtor *that was or could have been commenced* before the commencement of the [bankruptcy] case." (Emphasis added). The plain language of this section makes clear that it encompasses only proceedings which were instituted or could have been instituted before the petition in bankruptcy was filed. It neither expressly nor implicitly prohibits causes of action which arise *after* the petition in bankruptcy is filed. "Subsection (a)(1) provides for a broad stay of litigation against the debtor and includes administrative, judicial and other similar proceedings *but is limited to actions which could have been commenced before the commencement of the case* or which are based upon claims that arose before the commencement of the case." 2 L. King, *Collier on Bankruptcy,* ¶ 362.04[1] at 362–27 (15th ed. 1979) (emphasis added). According to the plain language of the statute, Turner's claim falls outside the provisions of section 362(a)(1), since his cause of action neither was commenced nor could have been commenced at the time Rubin's petition in bankruptcy was filed.

■ Congress carefully chose the language incorporated in section 362(a)(1) to reflect the legislative intent of protecting the debtor from the harassment and pressures often associated with the collection of

---

1. Subsequently, on February 24, 1983, Turner and Sanyo entered into a settlement agreement. The settlement agreement provided, in part, that Sanyo would purchase *new* advertising time from Turner. The agreement did not provide that Sanyo would pay Turner for the advertising time Rubin had previously purchased from Turner.

antecedent debts. *See, e.g., In re Anderson,* 23 B.R. 174 (Bkrtcy.N.D.Ill.1981); *In re Kors, Inc.,* 13 B.R. 683 (Bkrtcy.Vt.1981); *In re York,* 13 B.R. 757 (Bkrtcy.Me.1981). The stay serves this laudatory purpose by relieving the debtor "of the financial pressures that drove him into bankruptcy." *See* H.R. Rep. No. 95–595, 95th Cong., 1st Sess. 340 (1977), U.S.Code Cong. & Admin.News 1978, pp. 5787, 6297. The stay is designed to be a defensive shield, affording the debtor the much needed "breathing space" that he presumably lacked during the period immediately preceding the filing of the bankruptcy petition. *Id.* However, the stay is not designed to be an offensive weapon—a sword—which would permit the debtor to benefit unilaterally from the breaching of a post-bankruptcy petition contract that he voluntarily entered into. This is precisely what Rubin seeks here. In the case at bar, Rubin does not seek relief from any of the obligations that drove him into bankruptcy; rather, he seeks relief from an obligation he incurred after he was well aware of his gloomy financial condition. This court refuses to permit Rubin to arm himself with section 362(a)'s automatic stay when he voluntarily entered into a contract with Turner five months after the involuntary petition was filed against him.

In addition, courts have reasoned that since claims arising after a bankruptcy petition is filed are not dischargeable, there is no valid reason for invoking section 362(a) and halting the prosecution of these cases. In *In re Shenberg,* 433 F.Supp. 677, 680 (N.D.Ill.1977) for example, the court recognized that "debts coming into existence after the filing of a petition in bankruptcy

are not affected by a discharge; hence, they cannot justify a stay of proceedings against the bankrupt." Here, Rubin's liability under the Turner/Rubin contract is non-dischargeable, since it arose after the bankruptcy petition was filed. Thus, under the *Shenberg* analysis Turner's suit on this contract should not be stayed.

Finally, an important purpose of the bankruptcy laws in general, and section 362(a) in particular, would be severely undermined by allowing a debtor to hide behind section 362(a) in a suit arising after the bankruptcy petition was filed. One of the primary purposes of the bankruptcy laws is to enable the debtor to formulate either a repayment or a reorganization plan. *See* H.R.Rep. No. 95–595, *supra,* at 340. Critical to an effective reorganization attempt is the debtor's ability to continue conducting business with both old and new creditors. However, as *Collier* recognizes, staying claims arising *after* the petition is filed would discourage most creditors, particularly post-petition creditors, from conducting any business with the debtor. *See* L. King, 2 *Collier on Bankruptcy* ¶ 362.04, at 362–28. *See also In re York,* 13 B.R. at 758 (citing *Collier*). This court agrees and finds that this laudatory purpose would be ill-served by construing section 362(a) to preclude Turner's suit.

Accordingly, this court concludes that the plain language of the statute, the legislative history, the purposes for which the statute was enacted, and strong policy reasons all warrant the conclusion that section 362(a)'s automatic stay does not apply to a case commenced after a bankruptcy petition is filed.[2]

---

**2.** This court's conclusion that a breach of contract case for which the cause of action arose after the petition in bankruptcy was filed is not stayed by 11 U.S.C. § 362(a) does not mean that the plaintiff can defeat other aspects of section 362(a) and satisfy its default judgment. Other aspects of section 362(a) severely limit the ability of a plaintiff to satisfy a judgment it may receive even if the original action through which the plaintiff received that judgment was not prohibited by section 362(a)(1). *See* 11 U.S.C. § 362(a)(3) (automatic stay applies to "*any act* to obtain possession of the estate" even if the action upon which the plaintiff received its judgment was not prohibited by sec-

tion 362(a)(1)); 11 U.S.C. § 362(a)(4) (automatic stay applies to "*any act* to create, perfect, or enforce any lien against property of the estate" even if the judgment lien which the plaintiff asserts arose from an action not prohibited by section 362(a)(1)). *See also In re Anderson,* 23 B.R. 174, 175 (Bkrtcy.N.D.Ill.1982) (although section 362(a)(1) is inapplicable to proceedings commenced after the bankruptcy petition is filed, that creditor would still have to obtain relief from the stay before attaching, or executing on, the property of the estate); *In re Kors, Inc.,* 13 B.R. 683, 684 (Bkrtcy.Vt.1981) (same); *In re York,* 13 B.R. 757, 759 n. 3 (Bkrtcy.Me. 1981) (implicitly recognizing that subsections

## B. *Setting Aside the Entry of Default*

■ The second question raised in this case is whether this court should set aside the Clerk's entry of default against Rubin under Fed.R.Civ.P. 55(c). In pertinent part Rule 55(c) provides: "For good cause shown, the court may set aside an entry of default and, if a judgment by default has been entered, may likewise set it aside in accordance with Rule 60(b)." The decision to set aside a default is committed to the sound discretion of the court. *Mason v. Lister,* 562 F.2d 343, 345 (5th Cir.1977). Factors considered in determining whether a default should be set aside include: whether the defaulting party has presented a plausible excuse explaining the reasons for the default, whether the defaulting party acted promptly to vacate the default, whether the defaulting party asserts a meritorious defense, and whether the non-defaulting party will be prejudiced by setting aside the default. *See Rasmussen v. W.E. Hutton & Co.,* 68 F.R.D. 231, 233 (N.D.Ga. 1975).

### 1. *An Explanation of the Reasons for the Default*

■ This court's initial task is to determine whether Rubin has presented a plausible explanation of the reasons for his default. In this case Rubin asserts that his decision not to answer Turner's complaint was made on advice of counsel and upon a good faith belief that 11 U.S.C. § 362(a) stayed all suits against him. This court concludes that based on the facts presented Rubin's decision not to answer Turner's complaint on these grounds was neither reasonable nor excusable. It is difficult to believe that Rubin, with all the expertise he and his attorneys have gained in fighting the involuntary bankruptcy proceedings, can actually assert in good faith that he believed section 362(a) stayed Turner's suit. *See, e.g., Wilcox v. Triple D Corp.,* 78 F.R.D. 5, 7 (E.D.Va.1978) (court found unpersuasive defendant's argument that defendant should not suffer from its counsel's errors since the defendant was intimately involved with all aspects of the lawsuit). In addition, this court is unable to presume that Rubin's general counsel, Marc Lerner, even read section 362(a) before he concluded that the stay provisions applied to Turner's suit. Despite the clear language of section 362(a), Lerner admits that he was unaware of any distinction between pre- and post-petition debts. In his affidavit to this court, Lerner professed ignorance in bankruptcy matters and conceded that he was neither a bankruptcy practitioner nor Rubin's bankruptcy attorney. Assuming the court believes Lerner's statements, the obvious question is: Why did Lerner give Rubin any bankruptcy advice regarding this critical bankruptcy matter? In any event, Lerner took a risk by interpreting the statute in this manner, and his erroneous conclusion should not further prejudice Turner's rights. This court concludes that this alleged ignorance of the law by an attorney is insufficient to justify setting aside the entry of default, particularly when the facts were readily ascertainable and the statute's language is so clear.

### 2. *Timeliness in Seeking to Set Aside the Entry of Default*

■ The second factor to be considered in whether a default should be set aside is the timeliness of the defendant's action to set aside the default. In this case, default was entered by the clerk, pursuant to Rule 55(a), on March 18, 1983. Rubin was served with a copy of the request to enter default, and on or about April 1, 1983, Lerner received a copy of the request to enter default. An affidavit for the entry of the default judgment was filed on May 6, 1983, with an amendment filed on May 9, 1983, and copies were sent to Rubin. On or about May 12, 1983, Turner's attorney spoke with Lerner regarding the entry of default. During the course of the conversation, Lerner was informed that Turner contended that section 362 did not apply to a post-petition claim and, therefore, Rubin was in default. In June 1983, further correspon-

(a)(3) & (4) stay any act to secure claims arising either before *or after* the filing of a bank-       ruptcy petition).

dence and telephone calls were exchanged regarding the entry of default. Rubin did not move to set aside the entry of default at any time between the first notification of the entry of default in March 1983 until August 9, 1983. The court concludes that under the circumstances this was not a prompt response.

### 3. *The Defendant's Presentation of a Meritorious Defense*

■ The third factor in determining whether the defendant has shown good cause to entitle him to have the default set aside is whether the defendant has alleged a meritorious defense. It is well settled that general denials and conclusive statements are insufficient to establish a meritorious defense; the movant must present a factual basis for its claim. *Gomes v. Williams,* 420 F.2d 1364, 1366 (10th Cir.1970); *Madsen v. Bumb,* 419 F.2d 4, 6–7 (9th Cir. 1969); *Moldwood Corp. v. Stutts,* 410 F.2d 351, 352 (5th Cir.1969). With little factual support for his claims, Rubin assets three defenses: (a) the contract between Rubin and Turner was made and entered into in Los Angeles, California, and therefore this court does not have personal jurisdiction over Rubin; (b) Rubin acted as an agent for its disclosed principal, Sanyo, and Sanyo, not Rubin, is liable to Turner; (c) benefits received by Turner from Sanyo in the Turner/Sanyo settlement agreement must be offset against the sum Turner claims against Rubin.

■ Rubin first asserts that this court lacks jurisdiction over his person because the contract was made and entered into in California. The defense of lack of personal jurisdiction is a Rule 12(b) defense which may be asserted in the initial responsive pleading or by motion. Fed.R.Civ.P. 12(h) states that a Rule 12(b) defense is waived if it is not raised in the answer or by motion. In *Bavouset v. Shaw's of San Francisco,* 43 F.R.D. 296, 298 (S.D.Tex.1957), the district court, confronted with this issue, stated: "The question is whether the defendant, in allowing the case to proceed to default (although a default judgment was not entered), waived its right to assert a Rule 12(b) defense by motion." The court an-

swered this question in the affirmative, holding that since the defendant's motion to dismiss for the lack of jurisdiction over his person was filed after the defendant was in default, its motion would be denied. In this case, Rubin's failure to file a timely answer or motion asserting his defense of lack of personal jurisdiction constitutes a waiver.

■ In his second defense Rubin asserts that as an agent for a disclosed principal, he is not liable for the underlying debt. The law in Georgia states that an authorized agent is generally not personally liable on contracts which he enters into on behalf of the disclosed principal but an agent may become a party to a contract either by the terms of the agreement or by implication based on the surrounding facts and circumstances. *Pearl Assurance Co. Ltd. v. Bernath,* 185 Ga. 737, 196 S.E. 389 (1938). The affidavit of Tom Sullivan filed in support of the defendant's motion to set aside the entry of default acknowledges that Rubin was acting as an agent of a disclosed principal and that Rubin agreed to guarantee the principal's payment. *See* Sullivan affidavit ¶ 3 ("Rubin would guarantee Sanyo's payment"); Exhibit No. 1 ("Rubin & Associates guarantees payment"). Under O.C.G.A. § 10–7–1 (1982) sureties and guaranties are jointly and severally liable with their principal unless the contract provides otherwise. Since Rubin has admitted guarantying payment, he is jointly and severally liable on the account. The fact that Rubin was acting as an agent for a disclosed principal is not a meritorious defense.

■ Clinging to the last straw, Rubin asserts that he is entitled to have the benefits which Sanyo gave Turner offset his debt to Turner. If any money had been paid to Turner by Sanyo on *this* account, Rubin's debt would be offset by that amount. However, the terms of the settlement agreement entered into between Sanyo and Turner on February 24, 1983, demonstrate that Turner was providing new and valuable consideration to Sanyo in the form of additional advertising time. *See supra* n. 1. Since this was a separate contract involving new consideration on the

part of both parties, Rubin is not entitled to invoke the Turner/Sanyo contract and offset his obligation to Turner. In sum, Rubin has asserted no meritorious defense to this action and has significantly failed to allege that he does not owe Turner the money as alleged.

### 4. *Prejudice to the Non-Defaulting Party*

■ Rubin claims that Turner would suffer no prejudice if the entry of default was set aside and this case proceeded to trial. This court disagrees with Rubin's assertion. In *Rasmussen v. W.E. Hutton* the court reasoned that where it is clear that no meritorious defense exists, the delay in vindicating the plaintiff's rights amounts to an undue prejudice. 68 F.R.D. at 235. In addition, this court concludes that the expense a plaintiff incurs in prosecuting a suit in which the defendant has defaulted and presented no meritorious defense, unduly prejudices the plaintiff. In this case, since Rubin has failed to assert a meritorious defense and since Turner would experience delay and incur additional expenses in proceeding against Rubin, this court finds that Turner would suffer prejudice if the entry of default was set aside.

### C. *The Court's Subject Matter Jurisdiction Over This Case*

Rubin asserts that this court lacks subject matter jurisdiction over this case because the lawsuit was improperly removed from the State Court of Fulton County, Georgia, without Rubin's consent or acquiescence. Removal from a state court is permitted under 28 U.S.C. § 1441 (1976) if the district court has original jurisdiction. Under section 1441(b), a diversity action over which a federal court would have original jurisdiction may be removed only if none of the parties in interest properly joined and sued as a defendant is a citizen of the state in which the action is brought. In the petition for removal filed by defendant Sanyo, it was alleged that Sanyo was a citizen of Delaware and California and that Rubin was a citizen of California.

■ Section 1446 governs the procedure for removal. Under subsection (b) a petition must be filed within 30 days after the receipt by the defendant of a copy of the initial pleadings. The time period for removal starts to run from the time of service on the first defendant, and if the first defendant fails to remove during this first 30-day period, a subsequently served defendant cannot remove. *Transport Indemnity Co. v. Financial Trust Co.*, 339 F.Supp. 405, 409 (C.D.Cal.1972); *Crocker v. A.B. Chance Co.*, 270 F.Supp. 618, 619 (S.D.Fla. 1967). In addition, an unserved nonresident defendant need not be joined in a removal petition. *Wright v. Missouri Pacific RR.*, 98 F.2d 34, 35–36 (8th Cir.1938); *First National Bank of Chicago v. Mottola*, 302 F.Supp. 785, 788 (N.D.Ill.1969), *aff'd*, 465 F.2d 343 (7th Cir.1972).

■ In this case the time for removal started running upon service of the summons and complaint on Sanyo on March 3, 1982. Sanyo was required to remove by April 2, 1982. At the time of removal Rubin had not yet been served and was in fact not served until April 5, 1983. Since Rubin had not been served at the time Sanyo filed the removal petition, he did not need to be joined in the petition. As a result, the court's subject matter jurisdiction over this suit is not defeated.

### III. CONCLUSION

In summary, this court finds that the automatic stay provisions of section 362(a) do not apply to Turner's breach of contract suit against Rubin, since Turner's cause of action arose *after* the commencement of Rubin's bankruptcy proceedings. In addition, this court has discovered no jurisdictional or equitable barriers to the entry of a default judgment against Rubin. Accordingly, the plaintiff's motion for a default judgment is GRANTED, and the clerk will enter judgment in favor of the plaintiff against Rubin in the amount of $72,930 plus interest at 18% from February 5, 1982 (45 days after the date of the last invoice) until the date of judgment and at the legal rate thereafter plus the costs of this action; the defendant's motion to set aside the entry of default is DENIED; the defendant's motion to dismiss for lack of subject matter

jurisdiction is DENIED; and the defendant's remaining motion to order a change of venue is DENIED as moot.