Joseph WALDMAN, Sadie Sage, and Martin Dachs, on behalf of themselves and all others similarly situated, Plaintiffs,

v.

ELECTROSPACE CORPORATION, L. Handelsman & Company, Arnold M. Wolf, Samuel R. Buxbaum, Martin Buchwald, Edward M. Cappucci, James R. De Senna, Halsey F. Hubbard, Herbert L. Wolf, Harvey Cohen, Raymond Rietschel, Morton Lowenbraun and Martin L. Rein, Defendants.

Sidney DUBIN and Esther Dubin, on behalf of themselves and all others similarly situated, Plaintiffs,

v.

L. HANDELSMAN & COMPANY, Electrospace Corporation, Arnold M. Wolf, and Samuel R. Buxbaum, Defendants.

Moses WOLF, on behalf of himself and all others similarly situated, Plaintiff,

v.

L. HANDELSMAN & COMPANY, Electrospace Corporation, Arnold M. Wolf and Samuel R. Buxbaum, Defendants.

No. 74 Civ. 3097 (HFW).

United States District Court,
S. D. New York.

May 2, 1977.

Rabin & Silverman, New York City by I. Stephen Rabin, New York City, of counsel, for plaintiffs.

Rein, Mound & Cotton, New York City by Seymour J. Ugelow, New York City, of counsel, for defendants Lowenbraun and Rein.

Kronish, Lieb, Shainswit, Weiner & Hellman, New York City, Burton H. Brody, New York City, of counsel, for defendant Herbert L. Wolf.

Shea, Gould, Climenko & Casey, New York City by Leon P. Gold, New York City, of counsel, for defendant Harvey Cohen.

David M. Markowitz, New York City, for defendant James De Senna.

D'Amato, Costello & Shea, New York City by Robert E. Meshel, New York City, of counsel, for defendant L. Handelsman & Co.

## MEMORANDUM DECISION

WERKER, District Judge.

This is plaintiffs' renewed motion for class action determination pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure.

An earlier motion seeking similar relief was denied by the court on September 8, 1975 upon a finding that the requisite degree of numerosity had not been demonstrated.[1] 68 F.R.D. 281 (S.D.N.Y.1975). At that time, the court held that an increase in the number of shares of Electrospace common stock outstanding and a decrease in the number of debenture holders of record during part of the period for which class action determination was sought did not warrant the assumption that the proposed class of aggrieved share and debenture holders numbered in the thousands. The court, therefore, also declined to resolve questions concerning (1) the adequacy of representation which the representative plaintiffs and their counsel would afford the class, (2) the predominance of common questions of law or fact over individual questions, (3) the superiority of the class action device over other methods of adjudication, and (4) the proper scope of the class to be conditionally certified.

---

[1] Since the instant motion was only filed on November 3, 1976, defendants argue that it should be denied out-of-hand for unreasonable delay. Nevertheless, despite the admonition of Rule 23(c)(1) that the question of class action certification "shall" be determined by order of the court "as soon as practicable after the commencement of an action," mere delay in making a Rule 23 motion need not lead to its denial, *Souza v. Scalone*, 64 F.R.D. 654 (N.D. Cal.1974), where, as here, no prejudice has been alleged or shown. *Feder v. Harrington*, 52 F.R.D. 178, 181–82 (S.D.N.Y.1970).

The class proposed consists of all persons, except defendants and their privies, who purchased Electrospace common stock or 5½ percent convertible subordinated debentures due October 1, 1983 during the period from January 1, 1972 through April 26, 1974, and who either retain their securities or sold them at a loss.

## I

*a. Numerosity.* With respect to the question of numerosity, the weekly trading figures for Electrospace common stock show that 3,102,200 shares of stock were traded from January 1, 1972 through March 11, 1974.[2] Thus, if the average purchaser acquired 200 shares during the relevant period, the class would consist of approximately 15,200 present and former Electrospace shareholders.[3] Moreover, the sales figures for Electrospace convertible debentures suggest that there are also approximately 650 debenture holders in the proposed class,[4] if it is assumed that the average debenture holder acquired ten debentures during the relevant period.[5]

The court considers the assumptions behind these calculations to be rationally based. Therefore, since the defendants offer no evidence that the plaintiffs' reasoned estimates misrepresent the actual size of the class, I find joinder of all class members to be impracticable.[6]

*b. Representativeness.* In considering the original motion for class action determination, the court observed that the named plaintiffs had a strong interest in advancing their claims which made them fit representatives for the purported class. It also found their counsel to be amply qualified to pursue a recovery on behalf of a class. But contrary to the assumption evidenced in the affidavit of I. Stephen Rabin, Esq., lead counsel for the plaintiffs, these observations were not dispositive of the fourth requirement for class action certification, namely that the plaintiffs fairly and adequately represent the class. Rather, "the financial ability of the representative parties to pay

---

**2.** The accuracy of this figure, which is based upon the "Daily Price Stock Records—American Stock Exchange," is not questioned by the defendants. The trading statistics for Electrospace common stock end prior to the last day of the period for which class action determination is sought because the Securities and Exchange Commission suspended trading in Electrospace securities on March 12, 1974.

**3.** In estimating the size of a purported class of shareholders, this court has previously employed the figure of 200 shares per purchaser in *Handwerger v. Ginsberg*, No. 73 Civ. 4832 (S.D.N.Y. Jan. 2, 1975), slip op. at 4; and *Tucker v. Arthur Andersen & Co.*, 67 F.R.D. 468 (S.D.N.Y.1975). *See also Gold v. DCL, Inc.*, 399 F.Supp. 1123 (S.D.N.Y.1973) (Frankel, J.), where the size of the class was estimated based on an assumed average purchase of 100 shares. While the defendants argue that the court should not speculate as to the size of the class without some evidence as to the size of an average purchase of Electrospace common stock during the period in question, neither the plaintiffs in *Handwerger* nor those in *Tucker* offered any such evidence and the court sees no reason to require it of the plaintiffs here. Indeed, as counsel for the plaintiffs sagely observes, even if only one person purchased Electrospace stock during each week in question, there would still be a potential class of more than 100 shareholders, and sufficient numerosity for certification of a class. *See, e. g.,*

*Korn v. Franchard Corp.*, 456 F.2d 1206, 1209 (2d Cir. 1972) (Frankel, J.), where the court held that a potential class of 70 investors would suffice.

**4.** Plaintiffs' initial estimate of 550 debenture holders in the class appears to be inaccurate. According to the "Bank & Quotation Record," during the relevant period Electrospace debentures having a face value of $6,544,000 were sold. Since each debenture had a face value of $1,000, if each debenture purchaser acquired ten such debentures, the class should number approximately 654 members.

**5.** This was the assumption with respect to the debenture holders in *Handwerger, supra.*

**6.** Contrary to the defendants' intimations, *DeMarco v. Edens*, 390 F.2d 836, 845 (2d Cir. 1968), does not hold that the court may not make an "educated guess" as to the average number of securities acquired by each class member in order to estimate the size of the class; rather, in *DeMarco*, the size of the class was considered too speculative because the plaintiffs asked the court to estimate not only the number of securities acquired by each purchaser but *also* the actual number marketed by the underwriter. *See, e. g., Fischer v. Kletz*, 41 F.R.D. 377 (S.D.N.Y.1966) (class size need not be defined precisely.)

for notice to the class and other costs of litigation is also relevant." 68 F.R.D. at 286–87.

At the request of the court, Mr. Rabin recently submitted an *in camera* affidavit detailing the anticipated costs of prosecuting this action on behalf of the class proposed. After examination of that affidavit, the court is persuaded that the representative plaintiffs have sufficient interest and financial wherewithal to adequately represent a class, and that the expenses of litigation will ultimately be borne by the appropriate parties. The court therefore finds the proposed class representatives and their counsel to be proper advocates for the class.

*c. Predominance of Common Questions.* While the court's earlier opinion also identified some of the questions of law or fact common to the class, it deferred consideration of whether those questions would predominate over questions affecting only individual class members until such time as the numerosity requirement was met. Not unexpectedly, the defendants now contend that even if numerosity has been demonstrated, individual questions will predominate since purported class members purchased their securities in a steadily declining market and, therefore, as a group could not have relied upon the misrepresentations or omissions alleged in the complaint in making their purchases. Defendants argue that each class member will have to show that he himself relied upon material misrepresentations or omissions by the defendants in order to establish a cause of action and damages under the securities law. *See* Note of the Advisory Committee on Rules, 1966 Amendment to Rule 23, Federal Rules of Civil Procedure. They further contend that "dramatic" differences among the misrepresentations alleged for different years will also increase the importance of the individual issues to be litigated at trial.

In the first instance, the court notes that the question of whether reliance may be shown by market impact rather than more traditional methods of proof is itself a question common to all members of the class. *Gold v. DCL, Inc.,* 399 F.Supp. 1123, 1129 (S.D.N.Y.1973). However, even if it is assumed, *arguendo,* that this is not a "market impact" case, plaintiffs have alleged a continuing course of fraudulent misconduct which will clearly be the predominant issue for the trier of fact to resolve at trial. I therefore find that the common questions in this action will necessarily predominate over those concerning only individual members of the class.[7] *See Aboudi v. Daroff,* 65 F.R.D. 388, 392–93 (S.D.N.Y.1974).

*d. Superiority of Class Action.* Finally, the court finds that prosecution of this action on behalf of a class is far superior to other available methods for adjudication of the controversy. Both the predominance of common questions and the need to aggregate a series of relatively small claims[8] in order to prosecute this action efficiently make other methods of litigation impracticable. Moreover, there is no evidence that individual members of the purported class would want to attempt recovery in separate actions, nor are there other related actions pending against the defendants here. It is therefore in the interest of efficient husbandry of judicial resources to try all claims raised in the consolidated complaint before one court and to have representative plaintiffs proceed on behalf of a class.

## II

The arguments advanced by defendants with respect to definition of the class may

---

**7.** The court has not addressed the contention of several defendants that members of the class who acquired securities at different times may have hostile interests since that issue was considered in the court's earlier opinion.

**8.** For example, plaintiffs' consolidated complaint alleges that Joseph Waldman purchased 1000 shares of Electrospace common stock (in two installments) which were sold for a loss of approximately $8,250; that Sadie Sage ac-

quired and still retains five debentures, which are now substantially valueless, for a loss of $4,200; that Martin Dachs sustained a loss of $1,937.50 on 5000 shares of common stock which he retains; that Sidney and Esther Dubin lost $6,600 on ten debentures which they still retain; and that Moses Wolf lost approximately $1066 on his purchase and subsequent sale of 100 shares of common stock.

be dealt with summarily. First, even though the Electrospace audited financial statement for the year ended December 31, 1971 was not published until April 18, 1972, the consolidated complaint alleges that misleading financial information concerning the firm was disseminated in early January of 1972. Beginning the class period as of January 1, 1972 is therefore proper. Similarly, while the Internal Revenue Service publicly issued a report in September of 1973 proposing adjustments to prior Electrospace tax returns which would have led to the assessment of deficiencies, and despite Electrospace's disclosure to the SEC in December of 1973 that it had materially overstated net income in prior financial statements, the consolidated complaint alleges that other material misstatements or omissions by one or more defendants went uncorrected until April 26, 1974, the date that Electrospace filed under Chapter XI of the Bankruptcy Act. Thus, there is also no reason to end the class period before April 26, 1974.

The requested class will therefore be conditionally certified pursuant to Rule 23(b)(3). It is, of course, subject to refinement or modification should this prove necessary as the action moves forward.

Within 20 days from the entry of this decision, plaintiffs are to submit an order together with a form of notice and form of exclusion request in accordance with section 1.45 of the Manual for Complex Litigation (3d ed. 1973) and the forms related thereto. Said order is to provide for notice to the class within 30 days from the date it is entered.

SO ORDERED.