**In the Matter of Clarence B. ROGERS, Jr., Debtor.**

**Clarence B. ROGERS, Jr., as Debtor-in-Possession, Plaintiff,**

v.

**ALLIED MEDIA, INC., Defendant.**

**Bankruptcy No. A92–76275–WHD. Adv. No. 93–6336A.**

United States Bankruptcy Court, N.D. Georgia, Atlanta Division.

Oct. 4, 1993.

William Russell Patterson, Jr., Ragsdale, Beals, Hooper & Seigler, Atlanta, GA, for plaintiff.

A. Whitney R. Given, Epstein Becker & Green, P.C., Boston, MA, for defendant.

### ORDER

W. HOMER DRAKE, Jr., Bankruptcy Judge.

This matter comes before the Court on the Motion for Entry of Default Judgment, filed on July 20, 1993, by Clarence B. Rogers, Jr., (hereinafter "Plaintiff"), and the Motion to Remove Default, filed on August 20, 1993, by Allied Media, Inc. (hereinafter "Defendant"). The matters involved herein arise in an adversary proceeding commenced by the Plaintiff to compel the turnover of property to the estate, a core proceeding over which the Court has jurisdiction. 28 U.S.C. § 157(b)(2)(E). The Court will base its decision upon the following Findings of Fact and Conclusions of Law.

### FINDINGS OF FACT

On May 27, 1993, the Plaintiff, as Debtor-in-Possession, filed a Complaint to Compel Turnover of Property to the Estate, alleging that the Defendant is indebted to the Plaintiff in the principal sum of $19,508.89, plus interest. This debt, according to the Plaintiff, is property of the estate and subject to an order for turnover. Furthermore, the Complaint alleged that the Plaintiff is entitled to recover expenses, including reasonable attorneys' fees, due to the Defendant's bad faith and stubbornness in the underlying controversy. On the day this proceeding was commenced, the Plaintiff served by first class mail the Complaint, Summons, and Order and Notice on Roger C. Amato, the Defendant's Chief Executive Officer, at Woodstock, Vermont, and to Jarvis P. Kellogg, counsel for Defendant, in Boston, Massachusetts. Pursuant to the Summons, the Defendant had thirty days to answer or otherwise submit a response to the Complaint. The Defendant requested and received from the Plaintiff an extension to file its response up to and including July 7, 1993. Nevertheless, no answer was forthcoming, so the Plaintiff filed his Motion for Entry of Default Judgment on July 20, 1993. Ten days later, an Entry of Default was recorded by the Clerk of the Bankruptcy Court. The Defendant eventually filed its Answer accompanied by its Motion to Remove Default on August 20, 1993. As grounds for relief, the Defendant argues as follows:

> Defendant was attempting to resolve this dispute when this action was unexpectedly brought. Defendant, which is based in Vermont, was then required to engage counsel admitted in the State of Georgia and to apprise counsel of the facts of this matter. Defendant's Answer to Plaintiff's Complaint has been submitted herewith for filing with the Court. The Court should allow this Motion to Remove Default since the Plaintiff will not be prejudiced thereby.

Defendant's Motion at 1 (Aug. 19, 1993). For these reasons, the Defendant requests that the default be removed.

### CONCLUSIONS OF LAW

The grounds for setting aside an entry of default are set forth in the Federal Rules of Civil Procedure, which specifically provide as follows:

> For *good cause* shown the court may set aside an entry of default and, if a judgment by default has been entered, may likewise set it aside in accordance with Rule 60(b).

Fed.R.Civ.P. 55(c) (applicable to bankruptcy under Fed.R.Bankr.P. 7055) (emphasis added). The Court notes that this Rule sets out

two different standards to apply in two separate situations. The "good cause" standard applies to requests to set aside a default entered by the clerk of court, while the Rule 60(b) standard applies to motions to set aside an actual judgment of default entered by a court. The distinction is important since the "good cause" standard is less stringent than the one found in Rule 60(b). *EEOC v. Mike Smith Pontiac GMC, Inc.*, 896 F.2d 524, 528 (11th Cir.1990); *Atlanta Gas Light Co. v. Semaphore Advertising, Inc.*, 747 F.Supp. 715, 718 (S.D.Ga.1990); *Rasmussen v. W.E. Hutton & Co.*, 68 F.R.D. 231, 233 (N.D.Ga. 1975). The Defendant's Motion currently before the Court is one for removal of the entry of default, and not one to set aside a default judgment. Accordingly, the Court will apply the less stringent "good cause" standard in order to decide whether to grant this request.

■ In determining whether or not good cause exists to set aside an entry of default, courts generally consider the following four factors:

(1) whether the defaulting party has acted promptly to vacate the default;

(2) whether the defaulting party has presented a plausible excuse explaining the reasons for the default;

(3) whether the defaulting party asserts a meritorious defense; and

(4) whether the nondefaulting party will be prejudiced by setting aside the default.

*Turner Broadcasting System, Inc. v. Sanyo Elec., Inc.*, 33 B.R. 996, 1001 (N.D.Ga.1983), *aff'd*, 742 F.2d 1465 (11th Cir.1984); *see also Ochoa v. Principal Mut. Ins. Co.*, 144 F.R.D. 418, 420 (N.D.Ga.1992); 9 *Collier on Bankruptcy* ¶ 7055.05, at 7055–9 (15th ed. 1993) (discussing *Turner Broadcasting* ). Nevertheless, a decision should not be based upon a mechanical application of these principles, *Rasmussen*, 68 F.R.D. at 233, because a court has much discretion to grant a request to remove the entry of default in view of the circumstances surrounding the case. *O'Brien v. R.J. O'Brien & Assocs.*, 998 F.2d 1394, 1397–98 (7th Cir.1993); *Men's Sportswear, Inc. v. Sasson Jeans, Inc. (In re Men's Sportswear, Inc.)*, 834 F.2d 1134, 1138 (2d Cir.1987); *Atlanta Gas Light*, 747 F.Supp. at

718; *Walter E. Heller Western, Inc. v. Seaport Enter., Inc.*, 99 F.R.D. 36, 37 (D.Or. 1983). In addition, a court should keep in mind the strong policy consideration of adjudicating cases on their merits, and judgments by default generally are not favored. *Ochoa*, 144 F.R.D. at 420; *Rasmussen*, 68 F.R.D. at 233; 9 *Collier* at 7055–9.

## A. Prompt Action to Vacate Default

■ The first factor the Court will consider is whether the Defendant has acted promptly in vacating this entry of default. So long as the Defendant has made the request within a reasonable time after the default, its motion merits further consideration. *Atlanta Gas Light*, 747 F.Supp. at 718. In the proceeding currently before the Court, the Plaintiff filed his request for entry of default, and the Clerk of Court complied on July 30, 1993. The Defendant finally acted to set aside the default by filing its Motion on August 20, 1993, exactly three weeks later. The question for the Court remains, however, whether this three week delay was reasonable. *See, e.g., Mike Smith Pontiac*, 896 F.2d at 529 (default not set aside where defendant delayed almost four months in bringing motion); *Turner Broadcasting*, 33 B.R. at 1001–02 (delay of over four months not reasonable); *Walter E. Heller*, 99 F.R.D. at 37 (response "very soon" after entry of default was reasonable); *United States v. Topeka Livestock Auction, Inc.*, 392 F.Supp. 944, 951 (N.D.Ind.1975) (unreasonable delay of almost a month); *Consolidated Masonry & Fireproofing, Inc. v. Wagman Constr. Corp.*, 383 F.2d 249, 251 (4th Cir.1967) (two and one half month lapse not reasonable promptness). In view of the less stringent standard to be used in cases requesting the removal of default, the Court finds that the passing of less than one month from the time of entry of default to the time of the filing of the Motion is not per se unreasonable.

■ The Plaintiff has argued in his Brief in opposition to the Motion that the Defendant has not acted promptly to vacate the entry of default. Since the Motion for entry of default was made on July 20, 1993, the Defendant was required to respond within ten days according to the Local Rules of

this district. *See* LR 220–1(b)(1) (N.D.Ga. 1993) (applicable to bankruptcy under BLR 705–2 (Bankr.N.D.Ga.1993)). The Defendant's response came outside this ten day limit, so the Plaintiff contends its response to the default could not be characterized as prompt. The Court finds this position to be without merit, since Rule 55(c) sets the applicable standard, not the Local Rules. To determine whether a response is prompt and within a reasonable time, the Court looks to the date of the entry of default and not the date the Motion for default was filed. Nevertheless, promptness in response alone is not enough to set aside a default as the Defendant must make a further showing of good cause to excuse its failure to timely answer the Complaint. *See In re State Exchange Fin. Co.*, 896 F.2d 1104, 1106 (7th Cir.1990). Therefore, the Court will consider the remaining three factors.

### B. Plausible Excuse for Default

The second factor to consider on this Motion to set aside the entry of default is whether the defaulting party has presented a plausible excuse explaining the reasons for default, a factor that takes into account possible culpable conduct of a defendant. The Complaint was filed in this Court on May 27, 1993, and the thirty day period for the Defendant to respond expired on or about June 28, 1993. The Answer actually filed by the Defendant came on August 20, 1993, almost three months after this proceeding was commenced, and almost two months after the time for filing a response expired. The Defendant, however, has presented two reasons why the Court should excuse its delay in not responding to the Complaint within the required thirty days: (1) the action was brought unexpectedly while the parties were attempting to resolve the dispute, and (2) being based in Vermont, the Defendant had to find counsel admitted to practice in the State of Georgia. *See* Defendant's Motion at 1 (Aug. 19, 1993).

■ The Court finds the first reason asserted by the Defendant to be without merit. The mere fact that the parties to this action may have been involved in negotiations at the time the proceeding was commenced is not a sufficient justification for failing to respond to the Complaint in a timely manner. *Topeka Livestock*, 392 F.Supp. at 950–51. Furthermore, the fact a party unexpectedly becomes the defendant to a legal action is hardly an unusual circumstance. Since many defendants normally are caught by surprise at the commencement of a legal proceeding, they are given a generous thirty day time period in which to formulate a response. Merely being involved in an unexpected law suit does not justify the party delaying almost three months before filing an answer. Moreover, the Court has doubts about whether the Defendant really was caught by surprise when this proceeding was commenced. Specifically, in a letter dated April 8, 1993, the threat of legal action was made by the Plaintiff if the Defendant failed to satisfy the debt in controversy. *See* Complaint, Exhibit A (May 27, 1993). Based upon this evidence, the Court finds that the Defendant was on notice of a possible law suit and that it hardly could have been surprised when the Plaintiff actually commenced this proceeding.

■ The second reason the Defendant asserts to justify its delay is equally unconvincing. It is not an unusual situation when a party becomes a defendant to an action commenced in another state. The Court does empathize with the Defendant on the fact that it is located in a state over a thousand miles away from this forum. Nevertheless, the thirty day period in which to respond to the Complaint was more than enough time for it to locate and engage counsel admitted to practice in the State of Georgia.[1] The fact the Defendant is located in Vermont is no excuse for waiting almost three months before filing an answer.

■ The Court notes that the Defendant does not deny that it received the Complaint and Summons when it was served at the time the Plaintiff commenced this proceeding. Therefore, it must be assumed that the Defendant had full knowledge of the Court's

---

**1.** Based upon the bare essentials contained in the Defendant's Answer, it is obvious that not much effort was needed to prepare the actual response to the Complaint.

thirty day requirement from the beginning, but chose to ignore it. Such culpable conduct is evidence of a willful disregard of court rules, a reason for refusing to remove default. *See Ochoa*, 144 F.R.D. at 420. Being fully aware of this legal action from its inception, it was incumbent upon the Defendant to respond in a timely manner. As one court has stated,

> [u]pon proper notification of pending action parties *must respond diligently*, or face the concededly harsh consequences of a judgment resulting not from consideration of the merits, but from the parties' own inaction.

*FDIC v. Francisco Inv. Corp.*, 873 F.2d 474, 478 (1st Cir.1989) (emphasis added); *see also O'Brien*, 998 F.2d at 1402–03 (refusing to remove default and noting that defendant had actual notice of proceeding by actually being served). The reasons presented by the Defendant do nothing to relieve it of the responsibility to act diligently and to respect the requirement to respond in a timely fashion. Giving credence to the reasons the Defendant asserts to excuse the default "would weaken the integrity of the rules, which are to 'be construed to secure the just, speedy, and inexpensive determination of every action'." *Mike Smith Pontiac*, 896 F.2d at 529 (quoting Fed.R.Civ.P. 1). Therefore, the mere facts that the suit caught the Defendant by surprise and that it needed to locate counsel admitted to practice in this State are inadequate to explain the reasons for the default. By itself, however, a failure to explain the reason for default is not always sufficient to deny a request to set it aside, so the Court will consider the two remaining factors.

### C. Meritorious Defenses

A third factor for the Court to consider is whether the Defendant has asserted a meritorious defense to this proceeding. In addressing this issue, one court has stated:

It is well settled that general denials and conclusive statements are insufficient to establish a meritorious defense; the movant must present a *factual basis* for its claim.

*Turner Broadcasting*, 33 B.R. at 1002 (emphasis added); *see also Topeka Livestock*, 392 F.Supp. at 951 (noting that it is "absolutely essential" that defendant "claim with specificity" meritorious defenses); *Consolidated Masonry*, 383 F.2d at 251–51 (defendant failed to present facts to allow court to evaluate merits of defense). Therefore, the defendant must do more than just merely allege that it has a defense to this action. In contrast to the customary response to a complaint, there exists a higher burden of proof to establish a meritorious defense in a motion to remove an entry of default. While a mere denial may suffice in an answer, the defendant must go beyond a mere denial and present more evidence at this stage of the proceeding to justify setting aside the default.

In the proceeding currently before the Court, the Defendant has submitted its Answer along with its Motion to set aside the default. It appears that the main defense of the Defendant is that the amount claimed by the Plaintiff is not currently due and owing. Nevertheless, the Defendant does not present any of its own evidence to support this defense and the Answer contains only general denials and conclusive statements which, as noted above, are insufficient to demonstrate a meritorious defense. The Defendant does refer to Exhibit B of the Complaint, however, as evidence that its promise and ability to pay has been predicated upon the Defendant's completion of certain transactions.[2] This evidence is only relevant to the question of the *ability* of the Defendant to satisfy the Plaintiff's claim, but it does not go to the underlying issue of whether it is actually *obligated* to pay it.[3] In fact, in its

---

**2.** Apparently, the Defendant will have the ability to pay this claim to the Plaintiff once it sells a radio station located in Baltimore, Maryland. *See* Answer at ¶ 5.

**3.** Specifically, Exhibit B is a letter dated February 4, 1993, from the Defendant to the Plaintiff. In this letter, the Defendant acknowledges that it

owes the Plaintiff $19,508.89. This letter concludes with the following sentence: "As we close some transactions over the next few weeks and months we should be able to begin payments at that time." This sentence simply states that the Defendant did not have the current ability to pay the debt at that time, but hoped to be able to do

Answer, the Defendant *admits* that it owes the Plaintiff $19,508.89. *See* Answer at ¶ 5. Therefore, the Court finds that the Defendant has failed to establish in this Motion that it has a meritorious defense against the Plaintiff's claim.

### D. Prejudice to Nondefaulting Party

The final factor for the Court to consider on this Motion is whether the Plaintiff, as the nondefaulting party, would be prejudiced if the entry of default were set aside. As a general proposition, a mere delay in the ultimate resolution of the issues on the merits does *not* constitute prejudice to a plaintiff. *Francisco Inv. Corp.*, 873 F.2d at 479; *United Coin Meter Co. v. Seaboard Coastline R.R.*, 705 F.2d 839, 845 (6th Cir. 1983). When the defendant has failed to present a meritorious defense, however, the threat of prejudice is much greater. Specifically,

> where it is clear that no meritorious defense exists, the delay in vindicating the plaintiff's rights amounts to an undue prejudice. . . . [T]he expense a plaintiff incurs in prosecuting a suit in which the defendant has defaulted and presented no meritorious defense, unduly prejudices the plaintiff.

*Turner Broadcasting*, 33 B.R. at 1003 (citation omitted). As previously discussed, the Defendant in this proceeding has failed to present any meritorious defenses. In fact, it has admitted in its Answer that it indeed does owe the Plaintiff the amount asserted in the Complaint. Removing the entry of default would delay the vindication of the Plaintiff's rights and would force him to incur the expense of prosecuting a suit in which there exists no meritorious defense. Therefore, the Court concludes that removing the entry of default would unduly prejudice the Plaintiff.

### E. Summary

In view of the discussion of the above factors and the circumstances surrounding this proceeding, the Court finds that the Defendant has failed to show good cause to remove the entry of default. Despite acting promptly to vacate the default, the Defendant has failed to present a plausible excuse explaining the reason for the default and has failed to assert a meritorious defense. Moreover, the Plaintiff will be prejudiced in having to prosecute this action in which no meritorious defense exists. In reaching this conclusion, the Court is particularly swayed by the fact the Defendant waited almost three months to answer the Complaint, despite having knowledge of this proceeding from its inception. Moreover, the fact the Defendant admits in its Answer that it owes the amount sought in the Complaint makes it difficult to find that good cause exists for setting aside the entry of default.

In making this decision, the Court is not ignoring the strong policy consideration favoring adjudication of cases on the merits. In fact, the Court strongly agrees that it is much more desirable to address the issues of a proceeding instead of disposing of them on a procedural matter. Nevertheless, this policy is susceptible to strong countervailing considerations. The procedural aspects of a Rule 55 default serve an important purpose in the operation of the federal court system. As one authority has stated,

> [b]oth the default entry and judgment play an important role in the maintenance of an orderly, efficient judicial system. They are significant weapons for enforcing compliance with the rules of procedure and therefore facilitate the speedy determination of litigation. The default procedure offers a useful remedy to a good faith litigant who is confronted by an obstructionist adversary. It also represents a means of encouraging an unwilling or uncooperative party to honor the rules established for litigation in the federal courts and provides the nondefaulting party an expeditious path to follow when his adversary does not do so or simply abandons the contest. *But if default is to be an effective sanction, relief under Rule 55(c) cannot be granted too readily.*

*Atlanta Gas Light*, 747 F.Supp. at 718 (emphasis added) (quoting *Wright, Miller &*

---

so in the future. Nevertheless, it is devoid of any facts suggesting that an agreement may have

existed as to when this particular debt would become due and owing.

*Kane, Federal Practice and Procedure: Civil 2d* § 2693). The Court agrees with the above statement and will not readily grant the Rule 55(c) relief which the Defendant is seeking. That is not to say this Court would never be willing to do so, but in view of the facts and circumstances of this proceeding, removal of the entry of default would not be appropriate.

## CONCLUSION

The Defendant is in default in this proceeding by waiting almost three months before filing its Answer, and has failed to present any plausible excuse explaining the reasons for this delay. Also, it has not established that a meritorious defense to this action exists, particularly in view of the admission in the Answer that the Defendant owes the amount alleged by the Plaintiff in the Complaint. Moreover, forcing the Plaintiff to prosecute this action would be unduly prejudicial. Therefore, in view of these facts, the Defendant has failed to satisfy the "good cause" standard of Rule 55(c) as required to set aside the entry of default. Accordingly, the Defendant's Motion to Remove Default is hereby **DENIED,** and the Plaintiff's Motion for Entry of Default Judgment is hereby **GRANTED.**

**IT IS SO ORDERED.**

## JUDGMENT BY DEFAULT

Default was entered against Defendant Allied Media, Inc. on July 30, 1993. It is accordingly **ORDERED** that judgment is entered against Defendant Allied Media, Inc. and that Plaintiff have judgment against Allied Media, Inc. in the principal amount of $19,508.89, plus prejudgment interest in the amount of $5,435.80, plus costs in the amount of $120.00.