**In re Khaled M. JAWISH, Debtor.**

**American Express Travel Related Services, Inc., Plaintiff,**

**v.**

**Khaled M. Jawish, Defendant.**

**Bankruptcy No. 99–54184–JDW.
Adversary No. 00–5014.**

United States Bankruptcy Court,
M.D. Georgia,
Macon Division.

Nov. 20, 2000.

D. Ruth Primm, Atlanta, GA, for American Express Travel Related Services Co., Inc.

Charles E. Gay, Macon, GA, for Khaled M. Jawish.

## MEMORANDUM OPINION

JAMES D. WALKER, Jr., Bankruptcy Judge.

This matter comes before the Court on Motion for Entry of Default Judgment on the Complaint to Determine Dischargeability of Debt filed by American Express Travel Related Services Company, Inc. ("Plaintiff") in the case of Chapter 7 debtor Khaled M. Jawish ("Defendant"). This is a core matter within the meaning of 28 U.S.C. §§ 157(b)(2)(I) and (b)(2)(J). After considering the pleadings, evidence and applicable authorities, the Court enters the following findings of fact and conclusions of law in compliance with Federal Rule of Bankruptcy Procedure 7052.

### Findings of Fact

Defendant filed his Chapter 7 petition on October 29, 1999, and Plaintiff filed its complaint to determine the dischargeability of Defendant's debt on February 4, 2000. Defendant had a credit card account with Plaintiff in the name of "Atlantic International" to which he charged goods, services and travel expenses totaling $21,114.91 between February 27, 1999, and May 24, 1999. As of the petition date, Defendant owed $21,331.87 on the account.

Plaintiff alleged that because Defendant had only $43.00 in his monthly budget available to service credit card debt, and because Defendant incurred $158,901.82 in what appears to be credit card debt, including the debt to Plaintiff, Defendant could not have reasonably expected to pay Plaintiff. Accordingly, Plaintiff alleged that Defendant incurred the $21,331.87 debt under fraudulent circumstances warranting a determination that the debt is nondischargeable pursuant to Section 523(a)(2)(A) of the Bankruptcy Code.

Plaintiff also alleged that Defendant should be able to account for more than the $2,000.00 in household goods, $500.00 in wearing apparel, and $100.00 in cash that he listed on Schedule B. At least $12,000.00 of Defendant's unsecured $158,901.82 debt was incurred to Plaintiff for merchandise purchases, and in his Statement of Financial Affairs, Defendant indicated no losses, gifts, or transfers of personal property in the year preceding his petition. Plaintiff accordingly objected to Defendant's discharge pursuant to Sections 727(a)(2)(A), (a)(4)(A) and (a)(5).

Defendant's cardholder agreement with Plaintiff provided for payment of prejudg-

ment interest at 2.5 percent per month from the date of default to the date of judgment. The agreement deems the account in default if the cardholder files for bankruptcy. The agreement also requires the cardholder to pay the costs of collection, including attorney fees at the contractually provided rate of 15 percent of the unpaid balance. In paragraph 35 of the Complaint, Plaintiff stated its intention to collect attorney fees if the Court finds the debt nondischargeable, which Plaintiff indicated that Defendant could avoid if he paid $21,331.87 within 10 days of receiving the Complaint.

Defendant failed to answer by the March 6, 2000, deadline. The Clerk entered default, and Plaintiff moved for entry of default judgment on July 7, 2000. The Court scheduled the matter to be tried on September 12, 2000, and on September 6, 2000, Defendant answered. Defendant did not file a motion to open the default with his Answer, but at trial Defendant's attorney made an oral motion to open default.

Defendant's attorney explained that he had repeatedly attempted to discuss the pending adversary with Defendant, but for various reasons Defendant wanted to avoid the matter. Defendant's attorney proffered that Plaintiff's adversary caused Defendant psychological distress, and Defendant suffered marital difficulties as a result of his bankruptcy. According to Defendant's attorney, Defendant coped with these problems by ignoring them. Additionally, Defendant wanted to avoid the loss of wages he would suffer if he took time off from work to discuss Plaintiff's adversary with his counsel.

### Conclusions of Law

1. *Defendant's Oral Motion to Open the Default*

█ The Court will deny Defendant's oral motion to open the default entered against him on July 7, 2000. Pursuant to Federal Rule of Bankruptcy Procedure 7055, Federal Rule of Civil Procedure 55(c) governs Defendant's motion. Rule 55(c) provides, "For good cause shown the court may set aside an entry of default and, if a judgment by default has been entered, may likewise set it aside in accordance with Rule 60(b)." *Fed.R.Civ.P.* 55(c). The more lenient "good cause" standard of Rule 55(c), as opposed to the "excusable neglect" standard of Rule 60(b), will be applied because the Court has not entered default judgment. *See In re Tires and Terms of Columbus, Inc.*, Ch. 7 Case No. 99–40719–JTL, Adv. No. 00–4072, slip op. at 4, 2000 WL 33324535 (Bankr.M.D.Ga. Oct. 4, 2000) (citing *In re Rogers*, 160 B.R. 249, 251–52 (Bankr.N.D.Ga.1993)).

█ In order to uphold the policy favoring decisions based on cases' merits, the Court will address the four factors that courts in the Eleventh Circuit consider when seeking the "good cause" necessary to open a default. *See id.* These factors include consideration of (1) the promptness of the defaulting party's action to vacate the default, (2) the plausibility of the defaulting party's excuse for the default, (3) the merit of any defense the defaulting party might wish to present in response to the underlying action, and (4) any prejudice the party not in default might suffer if the default is opened. *Id.*, slip op. at 4–5 (citing *Turner Broad. Sys., Inc. v. Sanyo Elec., Inc.*, 33 B.R. 996, 1001 (N.D.Ga. 1983), *aff'd* 742 F.2d 1465 (11th Cir.1984)); *see also In re Rogers*, 160 B.R. at 252. Defendant's motion fails on all four of these factors.

The Court first determines whether the Defendant moved to open the default within a reasonable time. *See In re Tires and Terms*, slip op. at 5, 2000 WL 33324535; *In re Rogers*, 160 B.R. at 252. In *In re*

*Rogers,* the court held that under the less stringent standard of Rule 55(c), filing a motion to open a default a month after entry of default was not unreasonable per se. *See In re Rogers,* 160 B.R. at 252. It is unreasonable, however, to allow six months to pass before filing an Answer, and to wait until the trial, scheduled more than two months after entry of default, to move the Court to open the default. As the Court stated at trial, allowing Defendant to answer now would render the notion of a deadline pointless.

In considering the second factor, the Court addresses Defendant's possible culpability, inquiring into his excuse for defaulting. *Id.* at 253. Defendant's attorney's proffer of evidence at the trial were deemed proven by the Court. They indicate that Defendant deliberately chose to ignore Plaintiff's pending adversary. The Court acknowledges the psychological and marital distress Defendant experienced as a result of his bankruptcy and the adversary proceeding. Such distress is probably not uncommon among many individual debtors who appear before this Court. Defendant did not offer any evidence as to extraordinary hardship or disability created by the pendency of the Bankruptcy proceedings and this adversary. Defendant's willful disregard of this Court's rules cannot be excused. *See id.* at 254. Defendant's demonstrated ability to tend to his own routine daily business while engaging in willful dereliction of his duty to comply with the Court's rules points to the conclusion that the Court cannot excuse Defendant's failure to file a timely Answer.

Third, the Court asks whether Defendant might assert a meritorious defense to the action on which he has defaulted. *Id.* Defendant has a higher burden now that default has been entered than if he filed a timely Answer. At this stage, Defendant cannot rely on the general denials and conclusory statements that would have been sufficient in a timely Answer to avoid default. Defendant must allege some evidence of a factual basis for a meritorious defense before the Court can seriously consider opening the default. *Id.* (citing *Turner Broad.,* 33 B.R. at 1002). In making Defendant's oral motion, Defendant's attorney offered only Defendant's excuses for not having filed a timely Answer. Responding only with general admissions, denials, and statements of insufficient knowledge, Defendant has alleged no facts establishing a meritorious defense.

Fourth, the Court considers the prejudice Plaintiff would suffer if the Court opens the default. Opening any default poses the prospect of delay, and any delay is likely to have a prejudicial aspect, however slight it may be. Plaintiff has offered no specific showing of prejudice beyond the expense of additional court appearances and the postponement of the relief Plaintiff seeks to enjoy. Prejudice to the Plaintiff must be balanced against the policy favoring resolution of disputes on the merits. The problem here is that Defendant has referenced no merits upon which the dispute might be resolved in his favor. Thus there are no merits against which the prejudice to Plaintiff might be balanced. When a defaulting party has alleged no meritorious defense, the expense of prosecuting a suit makes any delay unduly prejudicial. *Id.* at 255.

■ Accordingly, Defendant's oral motion to open the default will be denied, and his Answer will not be considered. Defendant is deemed to have admitted Plaintiff's well-pleaded allegations, and the Court will enter judgment accordingly. *See Nishimatsu Constr. Co., Ltd. v. Houston Nat'l Bank,* 515 F.2d 1200, 1205 (5th Cir.1975). The Court determines that Defendant's

debt to Plaintiff is nondischargeable pursuant to Section 523(a)(2)(A).[1] Defendant must pay Plaintiff $23,331.87, plus interest at the rate of 2.5 percent per month from October 29, 1999 to the date of this Opinion, and court costs of $150.00. Furthermore, Plaintiff's discharge will be denied pursuant to Section 727(a)(2)(A), (a)(4)(A), and (a)(5).[2]

## 2. *Attorney Fees*

■■ The Court will not enter judgment for Plaintiff's attorney fees. Though the Eleventh Circuit has held that attorney fees may be properly awarded in an action to determine dischargeability of

debt pursuant to Section 523, " '[t]he construction of [a] contract for attorney's fees presents ... a question of local law.' " *TranSouth Fin. Corp. of Fla. v. Johnson*, 931 F.2d 1505, 1507 (11th Cir.1991). (quoting *Security Mortgage Co. v. Powers*, 278 U.S. 149, 154, 49 S.Ct. 84, 85, 73 L.Ed. 236 (1928)). In *TranSouth*, the Eleventh Circuit awarded attorney fees on a contract governed by Florida law. A contractual provision for attorney fees is valid, enforceable, and collectible under Georgia law, however, only after the debtor fails to pay the principal and interest within ten days of receiving written notice from the creditor of its intent to enforce such provision. *See* O.C.G.A. § 13–1–11(a)(3).[3]

---

1. Section 523(a)(2)(A) provides,

   A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—
   (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—
   (A)false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition[.]
   11 U.S.C. § 523(a)(2)(A).

2. Sections 727(a)(2)(A), (a)(4)(A), and (a)(5) provide,

   (a) The court shall grant the debtor a discharge, unless—
   . . .
   (2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be, transferred, removed, destroyed, mutilated, or concealed—
   (A) property of the debtor, within one year before the date of the filing of the petition;
   . . .
   (4) the debtor knowingly and fraudulently, in or in connection with the case—
   (A) made a false oath or account; [or]
   . . .
   (5) the debtor has failed to explain satisfactorily, before determination of denial of discharge under this paragraph, any loss of

assets or deficiency of assets to meet the debtor's liabilities[.]

3. O.C.G.A. § 13–01–11(a)(3) provides

   (a) Obligations to pay attorney's fees upon any note or other evidence of indebtedness, in addition to the rate of interest specified therein, shall be valid and enforceable and collectible as a part of such debt if such note or other evidence of indebtedness is collected by or through an attorney after maturity, subject to the following provisions:
   . . .
   (3) The holder of the note or other evidence of indebtedness or his attorney at law shall, after maturity of the obligation, notify in writing the maker, endorser, or party sought to be held on said obligation that the provisions relative to payment of attorney's fees in addition to the principal and interest shall be enforced and that such maker, endorser, or party sought to be held on said obligation has ten days from the receipt of such notice to pay the principal and interest without the attorney's fees. If the maker, endorser, or party sought to be held on any such obligation shall pay the principal and interest in full before the expiration of such time, then the obligation to pay the attorney's fees shall be void and no court shall enforce the agreement. The refusal of a debtor to accept delivery of the notice specified in this paragraph shall be the equivalent of such notice.

■ Georgia's statute governing contractual attorney fees has been addressed by the United States Supreme Court, the Fifth Circuit prior to September 30, 1981, and the Eleventh Circuit. *See generally Sec. Mortgage Co. v. Powers*, 278 U.S. 149, 49 S.Ct. 84, 73 L.Ed. 236 (1928); *In re East Side Investors*, 702 F.2d 214 (11th Cir.1983) (per curiam); *In re Atlanta Int'l Raceway, Inc.*, 513 F.2d 546 (5th Cir.1975); *Nat'l Acceptance Co. v. Zusmann*, 379 F.2d 351 (5th Cir.1967). These courts considered the statute in the context of proceedings under the old Bankruptcy Act, but insofar as unsecured claims for attorney fees are concerned, the essential holding in these cases continues to apply under the Code.[4] If a creditor perfects its contractual right to attorney fees in accordance with O.C.G.A. § 13–1–11(a)(3) prior to the commencement of the case, then the creditor is entitled to assert an unsecured claim for attorney fees in the case. *See In re East Side Investors*, 702 F.2d. at 215; *In re Homestead Partners*, 200 B.R. at 279 (citing *In re Standard Bldg. Assoc., Ltd.*, 85 B.R. 644, 648–49 (Bankr.N.D.Ga.1988); *In re Walsey*, 7 B.R. 779, 785–86 (Bankr. N.D.Ga.1980)); *cf. id.* at 278–79 (perfection within 90 day period prior to petition is avoidable preference). The creditor may not, however, perfect its right after commencement of the case. *See In re East Side Investors*, 702 F.2d at 215; *In re Atlanta Int'l Raceway*, 513 F.2d at 549 (post-petition perfection violated district court injunction analogous to Code's automatic stay).

■ In paragraph 35 of its complaint, Plaintiff attempted to perfect its right to attorney fees in a manner that may be acceptable in a state court collection action under Georgia law.[5] Under the Code, however, any effect the paragraph might have is void *ab initio* because it violates the automatic stay. *See* 11 U.S.C. § 362(a)(6).[6] Accordingly, the Court cannot enter judgment for Plaintiff's attorney fees because Plaintiff is not yet entitled to them. Defendant must first have the opportunity to avoid liability for contractual attorney fees that O.C.G.A. § 13–1–11(a)(3) affords him. *See Powers*, 278 U.S. at 158, 49 S.Ct. at 87 (purpose of Georgia statute is to protect defaulting debtor who pays within ten days from liability for attorney fees).

This case poses a curious circumstance for Plaintiff. While the issue of discharge is being resolved by this proceeding, so too

---

4. Section 506(b) of the Code preempts the applicability of O.C.G.A. § 13–1–11 where an oversecured creditor asserts that its attorney fees are secured, but because Section 502(b) does not specifically disallow unsecured claims for attorney fees, a creditor may present such a claim. *See In re Homestead Partners, Ltd.*, 200 B.R. 274, 276–77 (Bankr. N.D.Ga.1996).

5. Paragraph 35 of Plaintiff's complaint to determine dischargeability provides,

The terms and conditions of the account agreement between the Defendant and American Express calls for the payment of attorney's fees of 15% of the unpaid balance and costs expended by American Express in the collection of the Account. Should this

debt be found nondischargeable, plaintiff hereby states its intention to enforce this provision. Defendant may avoid liability for these contractual fees by voluntarily paying a total of $21,331.87 within ten (10) days of the receipt of this complaint.

(Complaint to Determine Dischargeability ¶ 35.)

6. Section 362(a)(6) provides,

(a) [A] petition filed under section 301 ... of [the Bankruptcy Code] ... operates as a stay, applicable to all entities, of—

...

(6) any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title[.]

11 U.S.C. § 362(a)(6).

is the issue of Defendant's liability to Plaintiff. An order will be entered in accordance with this opinion denying discharge and awarding a judgment to Plaintiff in the full amount of its claim, and will make no award of attorney's fees. If Plaintiff seeks attorney's fees after the stay is lifted by giving notice to Defendant under O.C.G.A. § 13–1–11(a)(3), Defendant may successfully argue that the claim has been merged into this judgment beyond further consideration by any court. The potential unfairness of such a result is mitigated by Plaintiff's decision to request a money judgment after the Court offered to permit Plaintiff to withdraw its money judgment demand in view of the potential inequity. Plaintiff advised the Court at the trial that it would prefer to have a money judgment in this adversary proceeding, without attorney's fees, rather than to proceed in state court with its claim, including attorney's fees, after the denial of Defendant's discharge.