See also 279 B.R. 366, 279 B.R. 370.

In re Ted Lamar JONES, Debtor.

Ted Lamar Jones, Plaintiff,

v.

J. Dale Mann; Dodd's Builder's Supply, Inc.; Bankston Lumber Company; Richard Milam, in his capacity as District Attorney for the Towaliga Judicial Circuit; Howard Simms, in his capacity as District Attorney for the Macon Judicial Circuit; Kelly Burke, in his capacity as District Attorney for the Houston Judicial Circuit, Defendants.

Bankruptcy No. 99–55074–JDW.

Adversary No. 01–5024–JDW.

United States Bankruptcy Court, M.D. Georgia, Macon Division.

July 31, 2001.

Jason M. Orenstein, Fricks, Dell & Orenstein, Macon, GA, for Debtor.

Joel V. Sherlock, Law Offices of Charles L. Ruffin, Macon, GA, for Dodd's Builder's Supply, Inc.

### MEMORANDUM OPINION

JAMES D. WALKER, Jr., Bankruptcy Judge.

This matter comes before the Court on Defendant Dodd's Builder's Supply, Inc.'s Motion to Open Default pursuant to Rule 55(c) of the Federal Rules of Civil Procedure. Fed.R.Civ.P. 55(c). The Court held a hearing on July 13, 2001. After considering the pleadings, evidence and applicable authorities, the Court enters the following findings of fact and conclusions of law in compliance with Federal Rule of Bankruptcy Procedure 7052.

*Findings of Fact*

On March 1, 2001, Debtor filed a complaint with this Court alleging, among other things, that Dodd's Builder's Supply, Inc. ("Defendant DBS") violated the automatic stay and the discharge injunction order issued by this Court on December 8,

2000, by attempting to collect a debt discharged by that order. Debtor states in his complaint that, along with his brother David Eugene Jones, he operated a home construction business. Debtor also states that as part of that business, they had a revolving account with Defendant DBS for supplies. At the end of 1999, Debtor and his brother owed approximately $8,000 to Defendant DBS, which they were unable to pay. Thereafter, Debtor filed for bankruptcy on December 30, 1999, and Debtor's brother, David Eugene Jones, filed for bankruptcy on April 3, 2000. The debt owed to Defendant DBS was listed in Debtor's bankruptcy schedules. Seeing that it was unable to collect its debt from Debtor or his brother, Defendant DBS filed materialman's liens for the amount it was owed against J. Dale Mann, a homeowner whose home was built by Debtor and his brother with supplies purchased from Defendant DBS, and against another owner. Debtor alleges in his complaint that these liens are invalid under Ga.Code Ann. § 44–14–361 et seq.

Subsequently, Debtor's debts, including the debt owed to Defendant DBS, were discharged on December 8, 2000, and David Eugene Jones's debts were discharged on July 17, 2000. Debtor alleges in his complaint that despite filing for bankruptcy and receiving a discharge of his debts, Defendant DBS swore out a warrant against him with the Monroe County Sheriff's Office stating Debtor had engaged in a scheme to defraud it in violation of Ga.Code Ann. § 16–8–15. Thereafter, Debtor filed a complaint against Defendant DBS with this Court claiming Defendant DBS violated the automatic stay and the discharge injunction order. Debtor's brother, David Eugene Jones, filed a similar complaint.

Defendant DBS appeared pro se before this Court at an expedited hearing held on March 12, 2001, concerning Debtor's complaint and the complaint filed by his brother. While the matter in dispute at the hearing did not directly affect Defendant DBS, Defendant DBS did appear. Thereafter, Defendant DBS wrote a letter to Debtor on April 25, 2001, in an effort to resolve the matter. However, Defendant DBS did not obtain legal counsel and failed to respond to the complaint filed by Debtor against it. Accordingly, a default was entered on May 7, 2001. Subsequently, Defendant DBS acquired legal counsel and filed this motion to open default on June 7, 2001.

### Conclusions of Law

Rule 55(c) of the Federal Rules of Civil Procedure provides "For good cause shown the court may set aside an entry of default and, if a judgment by default has been entered, may likewise set it aside in accordance with Rule 60(b)." Fed.R.Civ.P. 55(c). Because no judgement by default was entered in this case, it is the good cause standard that the Court must look to in determining whether to set aside the default.

This Court has previously noted that there are four factors which should be considered in assessing good cause. While other factors may also be considered, these four factors are: "(1) the promptness of the defaulting party's action to vacate the default, (2) the plausibility of the defaulting party's excuse for the default, (3) the merit of any defense the defaulting party might wish to present in response to the underlying action, and (4) any prejudice the party not in default might suffer if the default is opened." *Am. Express Travel Related Serv. v. Jawish (In re Jawish)*, 260 B.R. 564, 567 (Bankr.M.D.Ga.2000). In looking at these factors, a court should be mindful of the general policy favoring decisions based on the merits. *Id.*

The first factor to be considered is how promptly the defaulting party acted in attempting to vacate the default. As Defendant DBS correctly notes, *Rogers v. Allied Media, Inc.* found that the filing of a motion to open a default one month after the entry of default was not per se unreasonable. *Rogers v. Allied Media, Inc. (In re Rogers)*, 160 B.R. 249, 252 (Bankr. N.D.Ga.1993). In this case, a default was entered on May 7, 2001. Defendant DBS filed its motion to open the default on June 7, 2001. Having determined that Defendant DBS filed its motion one month after the default was entered, this Court finds that Defendant DBS was sufficiently prompt in its action to vacate the default. However, this period of one month should not be construed as a safe harbor for promptly filed motions for relief from default. In fact, but for the unliquidated damages aspect of this case, a judgment would have been entered within days of the entry of default, thereby creating a radically different and more strenuous standard for relief.

The second factor that a court should consider in opening a default is whether the defaulting party's excuse for the default is plausible. This involves an examination of the defaulting party's culpability. *Jawish*, 260 B.R. at 568. Here, Defendant DBS states that it did not respond to Debtor's complaint because it misunderstood the requirement that it respond in writing. Defendant DBS had not retained legal counsel. Defendant DBS also states that it attempted to resolve the matter by writing a letter to Debtor's counsel explaining that it had no actions pending against Debtor and that the liens it had filed were settled. Defendant DBS went on to state in its letter that it should be removed from Debtor's action with the Court. Having written this letter, Defendant DBS thought the matter was resolved.

This Court has previously stated in relation to this case that the lack of legal assistance which creates misunderstandings as to legal requirements cannot be viewed by the Court as a plausible excuse for failing to respond to Debtor's complaint. *Jones v. Mann (In re Jones)*, Ch. 7 Case No. 99–55074, Adv. No. 01–5024 (Bankr.M D. Ga. July 16, 2001) (order denying J. Dale Mann's motion to open default). Accordingly, Defendant DBS's excuse is, at best, marginally plausible. On the other hand, Defendant DBS has not exhibited the level of culpability comparable to J. Dale Mann, a defendant in this case who filed an unsuccessful motion to open default. This Court has never advised Defendant DBS to obtain legal counsel, as the Court did with J. Dale Mann. Therefore, Defendant DBS did not ignore any warnings by this Court. In addition, Defendant DBS exerted greater effort than Mr. Mann in responding to Debtor's complaint by writing directly to Debtor's counsel. Accordingly, this matter is distinguishable from J. Dale Mann's motion to open default in this case. So while Defendant DBS's excuse is marginally plausible, this factor will not weigh as heavily in the Court's analysis as it did in the Court's analysis of Mr. Mann's similar motion, because Defendant DBS has not exhibited the same level of culpability.

The third factor to consider in whether to open a default is whether the defaulting party has a potentially meritorious defense to the underlying action. Debtor's complaint states that Defendant DBS violated the automatic stay and the discharge injunction order issued in the case by attempting to collect a debt that had been discharged. Debtor alleges that Defendant DBS attempted to collect its debt by filing invalid materialman's liens, and by

swearing out a warrant alleging Debtor committed fraud against it. Debtor states that the materialman's liens were not valid because under Ga.Code Ann. § 44–14–361 et seq., a lien against a homeowner who receives the benefit of materials must be filed within ninety days. Debtor argues that Defendant DBS, having a revolving account with Debtor and his brother, applied the funds it received in such a way as to enable the debts to fall within the ninety day deadline, without regard to whether the supplies purchased were actually used on the individual's homes who had liens filed against them within the ninety days. Debtor further argues that the debts owed to Defendant DBS were not for supplies used on the buildings owned by the individuals who had liens filed against them, so the liens are not valid.

Defendant DBS responds by stating that the liens were valid and that it has not filed any criminal action or civil action against Debtor, so it has not violated the automatic stay or the discharge injunction order by attempting to collect a debt. Defendant DBS alleges that the criminal proceedings were initiated by the District Attorneys. As to the liens, Defendant DBS notes that it does not offer revolving accounts to customers. Instead, Defendant DBS maintains a 30 day account for customers, which must be paid in full each month. In addition, Defendant DBS states that it did not selectively apply payments made by Debtor. When it received payments from Debtor without instructions as to how to apply the payments, it followed "generally accepted accounting principles" and applied the payments to the oldest outstanding accounts. Furthermore, Defendant DBS cites Georgia case law that notes that a materialman is not required to show that the materials he is owed money for were actually used on the house of the homeowner who has had a lien filed against him. *Maloy v. Planter's Warehouse & Lumber Co., Inc.*, 142 Ga. App. 69, 234 S.E.2d 807, 809 (1977). Accordingly, Defendant DBS appears to have a potentially meritorious defense to Debtor's allegations.

■ As to the fourth factor, prejudice to the debtor, the opening of any default causes delay and therefore is somewhat prejudicial to a debtor. *Jawish*, 260 B.R. at 568. However, this prejudice must be balanced against the policy favoring resolving disputes on the merits. *Id.* Here, because Defendant DBS has asserted a defense with potential merit and the prejudice to Debtor appears to be minimal, the balance weighs in favor of opening the default.

■ Taking all of these factors into consideration, the Court finds that there is good cause to open the default. Defendant DBS was sufficiently prompt in its actions to vacate the default. The excuse offered by Defendant DBS for its default does not evince a high level of culpability, and Defendant DBS's defense to the underlying action appears to have merit. Furthermore, the Court is mindful of the general policy favoring decisions based on the merits.